**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 23-521(L), 23-522(c) _____    _____ Caption [use short title] _____

Motion for: to Expedite

_____

_____

Set forth below precise, complete statement of relief sought:

Defendants-Appellants jointly move to expedite

their appeals, Case Nos. 23-521, and 23-522.

Davitashvili et al. v.  Grubhub Inc. et al.

_____

_____

_____

_____

MOVING PARTY: Grubhub Inc, Uber Technologies, Inc., Postmates Inc.   OPPOSING PARTY: Davitashvili, Bensimon, Eliades, Swaby, Boisi, Obey

☐ Plaintiff    ☑ Defendant

☑ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: Adam G. Unikowsky    OPPOSING ATTORNEY: Devin Freedman

[name of attorney, with firm, address, phone number and e-mail]

Jenner & Block LLP    Freedman Normand Friedland LLP

1099 New York Ave. NW, Washington, DC 20001    1 SE 3rd Ave., Suite 1240, Miami FL, 33131

Tel: (202) 639-6000; Email: aunikowsky@jenner.com    Tel: 305-306-9211; Email: vel@fnf.law

Court- Judge/ Agency appealed from:  Judge Lewis A. Kaplan (SDNY)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain):_____
_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes   ☐ No   ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☐ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☐ No
Requested return date and explanation of emergency:   _____
_____
_____
_____
_____

Is oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No  If yes, enter date:_____

Signature of Moving Attorney:

Adam G. Unikowsky _____ Date: April 17, 2023   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MARIAM DAVITASHVILI, PHILIP ELIADES,
JONATHAN SWABY, JOHN BOISI, and NATHAN OBEY

    *Plaintiffs-Appellees,*

ADAM BENSIMON, MIA SAPIENZA, and MALIK
DREWEY,

    *Plaintiffs,*

    v.

GRUBHUB INC.,

    *Defendant,*

UBER TECHNOLOGIES, INC., and POSTMATES INC.,

    *Defendants-Appellants.*

On Appeal from the United States
District Court for the Southern
District of New York (Kaplan, J.)

23-521 (L)

MARIAM DAVITASHVILI, ADAM BENSIMON, PHILIP
ELIADES, JONATHAN SWABY, JOHN BOISI, and
NATHAN OBEY,

    *Plaintiffs-Appellees,*

MIA SAPIENZA, and MALIK DREWEY,

    *Plaintiffs,*

    v.

GRUBHUB INC.,

    *Defendant-Appellant,*

UBER TECHNOLOGIES, INC., and POSTMATES INC.,

    *Defendants.*

23-522 (C)

## DEFENDANTS-APPELLANTS' MOTION TO EXPEDITE

David J. Lender
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8153

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
*Attorneys for Grubhub Inc.*

Adam G. Unikowsky
Elizabeth B. Deutsch
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
*Attorneys for Uber Technologies,
Inc., and Postmates, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ...........................................................1

BACKGROUND ...............................................................................3

      A.     Uber's And Postmates' Arbitration Agreement And Delegation Clause...................................................................3

      B.     Grubhub's Arbitration Agreement ........................................5

      C.     Litigation History ................................................................7

ARGUMENT ....................................................................................9

I.     Expediting These Appeals Would Advance The Policy Of § 16 And Ensure That Appellants Can Benefit From Their Arbitration Agreements. ..................................................................10

II.    Expedited Appeal Is Consistent With This Circuit's Practice. .....................14

III.   Expedited Appeal Will Aid All Parties And The District Court...................16

CONCLUSION .................................................................................17

i

# TABLE OF AUTHORITIES

CASES

*Alascom, Inc. v. ITT North Electric Co.*, 727 F.2d 1419 (9th Cir. 1984) .............................................................................................12

*Antonyuk v. Hochul*, No. 22-2908, 2022 WL 18228317 (2d Cir. Dec. 7, 2022) ..................................................................................................9

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ............................................1

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ................................12, 13

*Atkins v. CGI Technologies & Solutions, Inc.*, 724 F. App'x 383 (6th Cir. 2018) .............................................................................................15

*Augustea Impb Et Salvataggi v. Mitsubishi Corp.*, 126 F.3d 95 (2d Cir. 1997) ..........................................................................................10, 12

*Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504 (7th Cir. 1997) .......................................................................11

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) .............1, 10

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007) ...........................11

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) ...........................................................................................................10

*Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019) ...........................................................................................................16

*Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp. (In re Complaint of Hornbeck Offshore (1984) Corp.)*, 981 F.2d 752 (5th Cir. 1993) ...........................................................................................................15

*Iceland Inc. v. Eisinger (In re Iceland Inc.)*, 112 F.3d 504, 1997 WL 196438 (2d Cir. Apr. 23, 1997) (unpublished table decision).............................9

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) ................................................13

*Levin v. Alms & Associates, Inc.*, 634 F.3d 260 (4th Cir. 2011) ......................12, 13

*Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017)...............................16

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460
    U.S. 1 (1983).....................................................................................2, 10

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) ...................................12

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)......................................16

*Sheet Metal Workers International Ass'n v. Transportation Displays
    Inc.*, 242 F.3d 367, 2000 WL 1836760 (2d Cir. Dec. 13, 2000) (un-
    published table decision) ......................................................................15

*Weiner v. Gutfreund (In re Salomon Inc. Shareholders' Derivative Lit-
    igation)*, 68 F.3d 554 (2d Cir. 1995)....................................................15

**STATUTES**

9 U.S.C. § 3..............................................................................................................7
9 U.S.C. § 16...........................................................................................................10

**OTHER AUTHORITIES**

Local Rule 31.2(b) ...................................................................................................15

Transcript of Oral Argument, *Coinbase, Inc. v. Bielski*, No. 22-105
    (U.S. argued Mar. 21, 2023) ................................................................12

Pursuant to Federal Rules of Appellate Procedure 2 and 27, Defendants-Appellants Uber Technologies, Inc., and Postmates Inc.,[1] Appellants in Case No. 23-521, and Grubhub Inc., Appellant in Case No. 23-522, move this Court to expedite their appeals. Appellants request that their appeals be scheduled according to the Expedited Appeals Calendar or expedited by other order of this Court. Plaintiffs-Appellees oppose this motion.

## PRELIMINARY STATEMENT

Defendants-Appellants jointly move to expedite their appeals of the district court's denial of their motions to compel arbitration. Appellants bring these interlocutory appeals under 9 U.S.C. § 16(a), which establishes a statutory right to take an "immediate" appeal of a district court's denial of a motion to compel arbitration. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009). For several reasons, expedited treatment is warranted in this case.

First, § 16(a) enshrines a "congressional judgment" that the enforcement of an arbitration agreement must be "vindicable immediately." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 880 n.7 (1994). Expediting Appellants' appeals would advance Congress's goal of ensuring that parties can proceed swiftly to arbitration.

---

[1] The entity formerly known as Postmates Inc. was acquired by Uber Technologies, Inc. on December 1, 2020. Postmates, LLC is a wholly-owned subsidiary of Uber Technologies, Inc.

1

Second, expedition would advance the Federal Arbitration Act's ("FAA")
"federal policy favoring arbitration" and protect the parties' contractual commitment
to resolve their disputes outside of court. *Moses H. Cone Mem'l Hosp. v. Mercury
Constr. Corp.*, 460 U.S. 1, 24 (1983). Indeed, if these appeals proceed according to
this Court's default schedule, Appellants will lose much of the benefit of their arbi-
tration agreements. Under the district court's scheduling order, the parties are poised
to litigate class certification in the summer and fall of 2023 and to have a hearing on
class certification in January 2024. Summary judgment proceedings are scheduled
to commence in February 2024 and to be completed in the spring of 2024. Expedited
appellate briefing is necessary to ensure that this Court renders a decision prior to
wasteful litigation, burdensome discovery, and a district court ruling on class certi-
fication or the merits.

Third, appeals of denials of motions to compel arbitration are substantially
similar to the types of cases automatically placed on this Circuit's Expedited Appeals
Calendar. Expediting these appeals would therefore be consistent with circuit prac-
tice.

Finally, Appellees will suffer no prejudice from an expedited schedule. To
the contrary, all parties would benefit from avoiding the costs and effort of poten-
tially unnecessary litigation and having a ruling from this Court before any class
certification and notice. Accordingly, these appeals should be expedited.

2

## BACKGROUND

### A. Uber's And Postmates' Arbitration Agreement And Delegation Clause

To use Uber's and Postmates' services, Plaintiffs-Appellees John Boisi, Mariam Davitshvili, Philip Eliades, Nathan Obey, and Jonathan Swaby created user accounts. Each Plaintiff-Appellee expressly agreed to Uber's December 2021 terms of use by affirmatively checking a box stating that he or she had "reviewed and agreed to" these terms and then clicking "Confirm." *See* Case No. 20-cv-3000 (S.D.N.Y.),[2] Declaration of Jennifer Sullivan, Dkt. 79 ¶ 39; *id.*, Ex. D at 3 (Boisi checkbox consent to December 2021 terms); *id.*, Ex. D at 4 (Davitashvili checkbox consent); *id.*, Ex. D at 5 (Eliades checkbox consent); *id.*, Ex. D at 6 (Obey checkbox consent); *id.*, Ex. D at 7 (Swaby checkbox consent). In the relevant time period, these terms also governed use of and claims relating to Uber's wholly-owned subsidiary Postmates, as Postmates accounts were linked to Uber accounts following the corporate acquisition. *See id.* ¶¶ 17–23.

Uber's December 2021 terms of use contain an agreement to arbitrate and a clause delegating threshold decisions of arbitrability to an arbitrator. The first section of the terms advises, in all capital letters, that the agreement contains a commitment to arbitrate any disputes, as follows:

> IMPORTANT: PLEASE BE ADVISED THAT THIS AGREE-
> MENT CONTAINS PROVISIONS THAT GOVERN HOW

---

[2] All docket citations herein are likewise to No. 20-cv-3000 (S.D.N.Y.).

> CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS EXPLAINED IN SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN THE TIME TO CONSIDER THIS IMPORTANT DECISION.

*Id.*, Ex. F at 55–56.

> The second section, labeled "Arbitration Agreement," provides:

> By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis as set forth in this Arbitration Agreement[.]

*Id.*, Ex. F at 56. That section includes a class-action waiver. *See id.*, Ex. F at 57. In a sub-provision entitled "Exceptions to Arbitration," the Arbitration Agreement limits the disputes to which it applies, enumerating exclusions not relevant to this appeal such as: "individual claims brought in small claims court," "individual claims of sexual assault or sexual harassment," and certain relief for alleged copyright, trademark, or patent infringement or similar intellectual-property claims. *Id.*, Ex. F at 60.

The Arbitration Agreement also contains a provision entitled "Delegation Clause," in bolded and underlined text. The Delegation Clause requires that an arbitrator shall have "exclusive authority" to resolve a threshold set of issues, including "any dispute arising out of or relating to the interpretation, applicability,

4

enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable." *Id.*, Ex. F at 59. Key to this appeal, that Delegation Clause also provides:

> An arbitrator shall also have exclusive authority to resolve **all threshold arbitrability issues, including issues relating to whether the Terms are applicable, [or] unconscionable[.]**

*Id.*, Ex. F at 59 (emphasis added).

## B. Grubhub's Arbitration Agreement

Plaintiffs-Appellees Adam Bensimon, John Boisi, Mariam Davitshvili, Philip Eliades, Nathan Obey, and Jonathan Swaby created accounts with Grubhub or Seamless prior to the commencement of this litigation. Declaration of Thomas J. Koreis, Dkt. 74 ¶¶ 5–6.[3] They placed orders through Grubhub's platform using their accounts, both before and during this litigation. *Id.* ¶¶ 7, 13.

When those Appellees placed their orders on Grubhub's platform, they each agreed that "by placing your order you agree to Grubhub's terms of use and privacy policy (both UPDATED on 12/14/2021)." *Id.*, Exs. B, C; *see id.* ¶ 10. The order page for both desktops and mobile devices included a blue hyperlink directly below the order placement button thereby allowing users to view the updated terms. *Id.*, Exs. B, C. The hyperlinked Terms of Use provide that each Grubhub user "read and

---

[3] Grubhub merged with Seamless in 2013, and the Terms of Use for both former companies were integrated on or about October 2014. *See id.* ¶ 4. The term "Grubhub" as used in this motion refers to both Grubhub and Seamless.

understood, and agree[d] to be bound by" the updated Terms and that "if [the user] d[id] not agree to the Updated Terms, [the user] will stop using" Grubhub.  *Id.*, Ex. D at ECF pp. 2, 20.  The Terms of Use further provide that they "will govern any disputes between [the user] and Grubhub, even if the dispute arises or involves facts dated before the 'Effective' date of the Updated Terms."  *Id.*, Ex. D at ECF p. 20.

The first page of the Terms of Use advises users in all capitalized text that the terms contain a binding arbitration clause:

> IMPORTANT: PLEASE REVIEW THE "DISPUTE RESOLU-TION" SECTION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH GRUBHUB, NO MATTER WHEN ARISING OR ASSERTED, THROUGH BINDING INDIVIDUAL ARBITRATION. YOU ACKNOWLEDGE AND AGREE THAT YOU AND GRUB-HUB EACH WAIVE THE RIGHT TO A TRIAL BY JURY. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS MORE CIRCUMSCRIBED DISCOVERY AND APPELLATE REVIEW THAN THERE WOULD BE IN COURT. YOU ALSO WAIVE YOUR RIGHT TO PARTICI-PATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING AGAINST GRUBHUB, WHETHER NOW PENDING OR FILED IN THE FUTURE. THERE ARE PRO-POSED CLASS ACTIONS OR REPRESENTATIVE ACTION PROCEEDINGS PENDING AGAINST GRUBHUB, AND THIS AGREEMENT APPLIES TO THEM UNLESS YOU OPT OUT AS DESCRIBED IN THE "DISPUTE RESOLUTION" SECTION BELOW.

*Id.*, Ex. D at ECF p. 2.  The Dispute Resolution Section, which itself appears with an enlarged heading in bold and all capitals, begins by advising users that the section:

> LIMITS THE WAYS YOU CAN SEEK RELIEF FROM
> GRUBHUB AND REQUIRES YOU TO ARBITRATE DIS-
> PUTES ON AN INDIVIDUAL BASIS.

*Id.*, Ex. D at ECF p. 20. That section's arbitration provision, in turn, mandates arbitration of "all claims, disputes, or disagreements … that in any way relate to" a user's "use of the Platform" or "relationship with Grubhub," and "any other dispute with Grubhub" a user may have. *Id.*, Ex. D at ECF p. 21. The arbitration provision also includes a class-action waiver, in all capitals. *Id.*, Ex. D at ECF p. 22.

## C. Litigation History

Plaintiffs filed their amended complaint on August 19, 2020. They allege that menu price parity provisions or non-discrimination clauses in Defendants-Appellants' agreements with restaurants violate federal and state law. *See* Amended Complaint, Dkt. 28 ¶¶ 55–61. The complaint seeks, among other relief, "an injunction to enjoin Defendants from continuing" to use these contractual terms to offer restaurant meals on their platforms. *Id.* at 55, Prayer for Relief (d).

On August 26, 2022, Appellants moved to compel arbitration under their respective terms of use and moved under FAA § 3 to stay district court proceedings until the parties' "arbitration has been had in accordance with the terms of the agreement[s]," 9 U.S.C. § 3. *See* Dkt. 73 (Grubhub's motion); Dkt. 77 (Uber's and Postmates' motion).

7

On March 16, 2023, the district court denied these motions. As to Uber and Postmates, the district court refused to enforce their December 2021 Delegation Clause, which assigned threshold questions of arbitrability to the arbitrator. The district court reached that result by crediting Appellees' passing reference—which appeared in a footnote of their brief opposing arbitration—to preserving a "challenge [to] the validity of the Delegation Clause on the grounds that it would be unconscionable to permit Postmates to enforce that clause." Pltfs.' Opp. to Mot. to Compel Arbitration, Dkt. 87, at 34 & n.9; *see* Opinion Denying Mot. to Compel Arbitration, Dkt. 103, at 25 & n.95 (citing same) ("Op."). Construing this footnote as a "specific attack on the delegation provision," the district court determined it was empowered to set aside the Delegation Clause and decide the arbitrability of Appellees' claims. Op. at 25 (quotation marks omitted). The district court determined that Appellees' claims were too "unrelated to their use of defendants' platforms," and so held that the underlying Arbitration Agreement did not cover the amended complaint's claims. *Id.* at 26–29.

As to Grubhub, the district court refused to enforce Grubhub's Terms of Use in their entirety. *Id.* at 21. The court held that because Grubhub does not require users to check a separate box to indicate their consent to the Terms of Use, no contract is formed. *Id.* at 21–22. It did not suffice, in the district court's view, that Grubhub expressly informs users directly below the button to click for an order that

8

placing an order is contingent on their acceptance of the Terms of Use. *Id.* The district court further held that Appellees' claims are not subject to arbitration because, in the district court's view, Appellees' claims lack a nexus to the Terms of Use. *Id.* at 27–29. At the same time, however, the district court acknowledged that Appellees "at some time used [Grubhubs's] platforms" and that "the literal meaning" of the platforms' Terms of Use mandate that Appellees' claims be decided in arbitration. *Id.*

On April 7, 2023, Grubhub, Uber, and Postmates timely noticed their appeals.

## ARGUMENT

Federal Rule of Appellate Procedure 2 provides that "a court of appeals may—to expedite its decision or for other good cause—suspend" the default briefing schedule. This Court is "generous" in "granting motions to expedite." *Iceland Inc. v. Eisinger (In re Iceland Inc.)*, 112 F.3d 504, 1997 WL 196438, at *1 (2d Cir. Apr. 23, 1997) (unpublished table decision); *see, e.g.*, *Antonyuk v. Hochul*, No. 22-2908, 2022 WL 18228317, at *1 (2d Cir. Dec. 7, 2022).

The Court should expedite Appellants' appeals. Expedited treatment is consistent with § 16(a) and necessary to protect the parties' contractual rights under the FAA. Expedition also conforms with this Circuit's practice. Moreover, Appellees will not be prejudiced by an expedited schedule. To the contrary, all parties and the

9

district court stand to benefit from efficient resolution of these appeals, since litigation remains ongoing on behalf of putative classes including persons who would be subject to arbitration like Appellees.  In particular, given the current litigation schedule, expedited briefing is needed to ensure that this Court resolves this case before the parties engage in undue and wasteful discovery, class certification briefing, and summary judgment proceedings.

## I.  Expediting These Appeals Would Advance The Policy Of § 16 And Ensure That Appellants Can Benefit From Their Arbitration Agreements.

**A.**  Section 16(a) of the FAA is emphatically "pro-arbitration." *Augustea Impb Et Salvataggi v. Mitsubishi Corp.*, 126 F.3d 95, 99 (2d Cir. 1997) (quotation marks omitted).  The provision makes clear that a party to an arbitration agreement may take an appeal from an order denying a motion "to compel arbitration" or "refusing a stay" of litigation to facilitate arbitration.  9 U.S.C. § 16(a)(1)(A), (C).  Section 16(b) simultaneously "bars appeal of interlocutory orders favorable to arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86 (2000); *see* 9 U.S.C. § 16(b).  Section 16 thus reinforces the FAA's "clear intent[] … to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22.  The Supreme Court has reiterated that § 16(a) expressed a "congressional judgment" that the enforcement of an arbitration agreement is "important enough" to be "vindicable *immediately*." *Digital Equip. Corp.*, 511 U.S. at 880 n.7 (emphasis added).

10

After all, the efficiency benefits of arbitration "are eroded, and may be lost or even turned into net losses, if it is necessary to proceed in both judicial and arbitral forums, or to do this sequentially." *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997). "The worst possible outcome would be to litigate the dispute, to have the court of appeals reverse and order the dispute arbitrated, to arbitrate the dispute, and finally to return to court to have the award enforced." *Id.* Hence, "the availability of interlocutory review under Section 16 of decisions favoring litigation avoids the possibility that a litigant seeking to invoke his arbitration rights will have to endure a full trial on the underlying controversy before he can receive a definitive ruling on whether he was legally obligated to participate in such a trial in the first instance." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007) (quotation marks and alterations omitted).

Section 16(a)'s guarantee of an interlocutory appeal is beneficial only if that interlocutory appeal is resolved before district court litigation proceeds too far. If the case advances through substantial discovery and towards final judgment while the appeal is pending, then the purpose of the interlocutory appeal—ensuring that the parties do not litigate their case in two fora—would be undermined. As this Court has framed it, § 16(a) is "designed to prevent the appellate aspect of the litigation process," which is often characterized by elongated timelines, "from

impeding the expeditious disposition of an arbitration." *Augustea Impb Et Salvataggi*, 126 F.3d at 99 (quoting David D. Siegel, *Practice Commentary: Appeals from Arbitrability Determinations*, 9 U.S.C.A. § 16, at 352 (West Supp. 1997)).

Notably, other circuits have addressed this concern by issuing automatic stays of district court litigation when a party takes a § 16(a) appeal. *See, e.g.*, *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263–66 (4th Cir. 2011). In this Circuit, however, no such automatic stay issues. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53–54 (2d Cir. 2004). Although this Circuit's case law permits litigation in the district court to proceed while a § 16(a) appeal is pending, the Court should at least grant the modest relief of ensuring these appeals are resolved quickly before the case substantially advances.[4]

**B.** Expedited consideration is also necessary to ensure that the benefits of arbitration are not irrevocably lost. "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quotation marks omitted). If the case proceeds too far, "the advantages of arbitration—speed and economy—are lost forever." *Alascom, Inc. v. ITT N. Elec. Co.,* 727 F.2d 1419, 1422 (9th Cir. 1984).

---

[4] In *Coinbase v. Bielski*, No. 22-105, the Supreme Court will shortly resolve a circuit split on this issue. At oral argument in *Coinbase*, Chief Justice Roberts made the point that, even without a stay, a party "can ask the court of appeals for expedition." Transcript of Oral Argument at 29:21–22, *Coinbase, Inc. v. Bielski*, No. 22-105 (U.S. argued Mar. 21, 2023).

"[T]he parties will not be able to unring any bell rung by discovery, and they will be forced to endure the consequences of litigation discovery in the arbitration process." *Levin*, 634 F.3d at 265.

These concerns are particularly acute where, as here, Appellees have brought a putative class action and Appellants seek to compel individualized arbitration. Class treatment represents a "fundamental change that sacrifices the principal advantage of arbitration and greatly increases risks to defendants." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1414 (2019) (internal quotation marks and citations omitted); *see AT&T*, 563 U.S. at 347–48.

Those risks are stark in this case. Litigation is continuing apace in the district court, including resource-intensive discovery and critical motions practice in the coming months—from class discovery, to class certification briefing, and even summary judgment proceedings. The district court's case management plan provides as follows: pre-class certification fact discovery will conclude and Appellees' motion for class certification will be due by July 2023; class-related discovery regarding Plaintiffs' expert report(s) will conclude in October; Appellants' oppositions to class certification will also be due in October; and the district court is scheduled to hold a class certification hearing in January 2024, with summary judgment proceedings to follow in February through May 2024. *See* Order Regarding the Parties' Modified Scheduling Order, Dkt. 102, at 2–3. This schedule means that Appellants stand to

13

lose the benefits of arbitration—and their contracts' constituent class-action waivers—during the pendency of these appeals if this Court hews to its default schedule.

To be sure, even if this Court compels Appellees to arbitrate, *some* further proceedings (including discovery) will occur in the district court. One plaintiff did not agree to any arbitration agreement with any Appellant, and so his claims will proceed in the district court regardless of how these appeals are resolved. However, those proceedings will be significantly narrower if this Court compels arbitration with respect to Appellees. This is because any putative class would be composed of far fewer class members: only individuals that did not enter into arbitration agreements with Appellants.

In addition, if this Court does not expedite these appeals, the district court could proceed all the way to summary judgment before this Court decides the appeals. If this Court compels arbitration only *after* the district court's ruling on a summary judgment motion, such an order could risk distorting the ensuing arbitration by coloring the arbitrator's view of the merits. If this Court's ultimate decision is to reverse the district court, the parties should proceed to arbitration on a clean slate.

## II. Expedited Appeal Is Consistent With This Circuit's Practice.

Scheduling these appeals for expedited consideration is also consistent with

circuit practice. This Court has "ordered … expedited" interlocutory appeals "[p]ursuant to § 16 of the FAA" where the district court denied a motion to compel arbitration and stay of litigation under § 3. *See Weiner v. Gutfreund (In re Salomon Inc. S'holders' Derivative Litig.)*, 68 F.3d 554, 557 (2d Cir. 1995); *see also, e.g.*, *Sheet Metal Workers Int'l Ass'n v. Transp. Displays Inc.*, 242 F.3d 367, 2000 WL 1836760, at *1 (2d Cir. Dec. 13, 2000) (unpublished table decision). Other circuits have likewise expedited appeals under § 16(a) for similar reasons. *See, e.g., Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383, 386 (6th Cir. 2018); *Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp. (In re Complaint of Hornbeck Offshore (1984) Corp.)*, 981 F.2d 752, 753–54 & n.4 (5th Cir. 1993).

Furthermore, § 16(a) appeals are substantially similar to the types of cases automatically placed on this Circuit's Expedited Appeals Calendar. Those cases include district court decisions dismissing complaints for: "lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)"; "failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6)"; or "filing a frivolous complaint or for any other ground specified in 28 U.S.C. § 1915(e)(2)." Local Rule 31.2(b). Just like those types of decisions, a district court's ruling denying a motion to compel arbitration generally presents a pure question of law, which can be resolved without expenditure of substantial judicial resources.

15

That characterization fits this case. The parties present clean issues of law on a small record. With respect to Uber and Postmates, their December 2021 terms of use contain a Delegation Clause. Uber and Postmates intend to argue that, under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010), and *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–31 (2019), the Delegation Clause was enforceable, and the arbitrator should have decided questions of arbitrability. Grubhub, for its part, intends to argue that Appellees validly agreed to its Terms of Use under *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 78–80 (2d Cir. 2017), and that the Terms of Use mandate arbitration of this dispute.

There is no need for a drawn-out schedule for the parties to brief these issues. The expedited briefing calendar provides ample time.

## III. Expedited Appeal Will Aid All Parties And The District Court.

Appellees will suffer no prejudice if this Court agrees to expedite. Given the narrow issues on appeal, the Court's expedited schedule provides plenty of time for Appellees to brief the issues thoroughly. Moreover, Appellees stand to benefit from clarity on whether this case will be litigated in court or before an arbitrator. No one wins if the parties have to waste time and money in one forum before being transferred to another to start again.

16

Expediting these appeals would also conserve judicial resources.  It would be regrettable if the district court had to conduct class certification and summary judgment proceedings only to be told by this Court that the matter must be sent to arbitration.

## CONCLUSION

For the foregoing reasons, Defendants-Appellants Grubhub, Uber, and Postmates respectfully request that their appeals be scheduled according to the Expedited Appeals Calendar pursuant to Local Rule 31.2(b) or expedited by other order of this Court.

Dated:  April 17, 2023

Respectfully Submitted,

/s/ Adam G. Unikowsky

David J. Lender
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8153

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
*Attorneys for Grubhub Inc.*

Adam G. Unikowsky
Elizabeth B. Deutsch
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000
*Attorneys for Uber Technologies, Inc., and Postmates, LLC*

17

# CERTIFICATE OF COMPLIANCE

This motion complies with the Court's order because it contains 3,895 words, excluding the exempted parts of the motion. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013, Times New Roman 14-point.


Dated:  April 17, 2023                    By:  /s/ Adam G. Unikowsky

                                          Adam G. Unikowsky

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 17, 2023                    By: /s/ Adam G. Unikowsky
                                          Adam G. Unikowsky