# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

| | |
|---|---|
| MARIAM DAVITASHVILI, PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, and NATHAN OBEY,<br><br>    *Plaintiff-Appellees*,<br><br>ADAM BENSIMON, MIA SAPIENZA, and MALIK DREWEY,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>GRUBHUB INC.,<br><br>    *Defendant*,<br><br>UBER TECHNOLOGIES, INC., and POSTMATES INC.,<br><br>    *Defendants-Appellants*. | On Appeal from the United States District Court for the Southern District of New York (Kaplan, J.)<br><br>23-521 (L) |
| MARIAM DAVITASHVILI, ADAM BENSIMON, PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, and NATHAN OBEY,<br><br>    *Plaintiff-Appellees*,<br><br>MIA SAPIENZA, and MALIK DREWEY,<br><br>    *Plaintiffs*,<br><br>GRUBHUB INC.,<br><br>    *Defendant-Appellant*,<br><br>UBER TECHNOLOGIES, INC., and POSTMATES INC.<br><br>    *Defendants*. | 23-522 (C) |

## APPELLEES' OPPOSITION TO MOTION TO EXPEDITE

Velvel (Devin) Freedman
FREEDMAN NORMAND FRIEDLAND LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
(786) 924-2900

Greg Frank
FRANK LLP
305 Broadway, Suite 700
New York, NY 10007
(212) 682-1853

Edward Normand
Stephen Lagos
FREEDMAN NORMAND FRIEDLAND LLP
99 Park Avenue, Suite 1910
New York, NY 10016
(646) 350-0527

*Counsel for Plaintiffs-Appellees*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 1

    I.    PLAINTIFFS' CLAIMS ............................................................................. 1

    II.   PROCEDURAL HISTORY ........................................................................ 4

ARGUMENT ............................................................................................................ 5

CONCLUSION ......................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Cases**

*Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*,
　128 F.3d 504 (7th Cir. 1997) .................................................................................... 7

*Doe v. Trump Corp.*,
　2020 WL 2538400 (S.D.N.Y. May 18, 2020) ........................................................ 6

*In re Managed Care Litig.*,
　2001 WL 664391 (S.D. Fla. June 12, 2001) .......................................................... 7

Pursuant to Federal Rule of Appellate Procedure 27, Plaintiffs-Appellees Mariam Davitashvili, Adam Bensimon, Philip Eliades, Jonathan Swaby, John Boisi, and Nathan Obey respectfully submit this Memorandum of Law in opposition to Defendants-Appellants Grubhub Inc., Uber Technologies, Inc., and Postmates Inc.'s Motion to Expedite.

## INTRODUCTION

Defendants-Appellants ("Defendants") have filed a seventeen-page motion to expedite their appeal of the District Court's order denying their motions to compel arbitration on numerous grounds. Buried in that brief, Defendants admit that *even if* they prevail on appeal (they shouldn't), Plaintiff Malik Drewey's claims will still proceed in court as a putative class action. Because Drewey's claims are (i) the same as Plaintiffs-Appellees' claims, (ii) brought on behalf of the same class, and (iii) brought against the same Defendants, the parties will incur *the same costs* litigating this matter below *regardless* of what happens on appeal. Under these facts, there is no basis to expedite Defendants' appeal. Defendants' motion should be denied.

## FACTUAL BACKGROUND

### I. PLAINTIFFS' CLAIMS

Defendants operate online platforms that enable consumers to search for and order from participating restaurants. (Case No. 1:20-cv-03000 (LAK) (S.D.N.Y.),

Dkt. No. 28 ("AC") ¶ 27.)[1] When a consumer orders a meal through one of Defendants' platforms, Defendants collect revenue from both the consumer and the restaurant, including by charging the restaurant a hefty commission on the total amount paid by the consumer. (*Id.* ¶¶ 40-45.) That commission is typically equal to approximately 30% of the total amount paid by the consumer. (*Id.* ¶¶ 3, 41, 109, 130.)

In many cities, the vast majority of restaurants sell meals through Defendants' platforms. (*Id.* ¶¶ 80-83.) These restaurants are bound by certain contractual terms that Defendants impose. Grubhub and Uber both impose on restaurants "wide" no-price-competition clauses ("NPCCs"), under which any restaurant that sells through their platform is prohibited from selling meals at a lower price through any other sales channel. (*Id.* ¶¶ 55-56, 59-61.) Pursuant to these clauses, a restaurant that sells any products through Grubhub or Uber cannot sell its meals at a lower price directly to consumers or through a competing platform, like Doordash. (*Id.*) Postmates imposes "narrow" NPCCs, which only prohibit restaurants that sell through Postmates from selling meals directly to consumers at a lower price. (*Id.* ¶¶ 57-58.)

Plaintiffs allege that Defendants' NPCCs are anticompetitive and have caused Plaintiffs to pay supracompetitive prices at restaurants that are bound by those clauses. (*Id.* ¶¶ 125-35, 140-50.) Because Defendants' commissions are so high

---

[1] All "Dkt. No." cites are to the proceedings below, *Davitashvili v. Grubhub Inc.*, No. 1:20-cv-03000 (LAK) (S.D.N.Y.), unless otherwise noted.

2

relative to restaurants' profit margins, restaurants that sell through Defendants' platforms must increase their prices when they sell through Defendants' platforms. (*Id.* ¶¶ 75, 142-44, 146.) Defendants' NPCCs, in turn, require restaurants to charge those same inflated prices to consumers who buy directly from those restaurants or who buy through competing platforms. (*Id.* ¶¶ 147-49.) As a result, Defendants' NPCCs force consumers who purchase through a restaurant's lower-cost sales channels (*i.e.*, directly from restaurants or through non-defendant platforms) to subsidize consumers who purchase through Defendants' platforms, where restaurants face higher marginal costs. (*Id.* ¶¶ 4-7.)

Plaintiffs seek damages for only (i) their direct purchases from restaurants bound by Defendants' NPCCs and (ii) their purchases from such restaurants through non-defendant platforms. (*Id.* ¶¶ 173-75.) Plaintiffs <u>do not</u> seek damages for purchases made directly through Defendants' platforms (*id.* ¶ 175), nor do they even allege that they have ever used Defendants' platforms (*id.* ¶¶ 10-17). Indeed, Plaintiff Drewey—along with millions of members of the putative class—<u>has never</u> used those platforms. (Dkt. No. 75-2 at 4-5; *see also* AC ¶¶ 5, 8 (alleging that Defendants' conduct has harmed "millions of consumers who are not even using" Defendants' platforms).) Plaintiff Drewey, as Defendants concede (at 14), is not bound by Defendants' arbitration provisions in any respect.

3

## II.  PROCEDURAL HISTORY

Plaintiffs filed their operative complaint in August 2020. In October 2020, Defendants jointly moved to dismiss. (Dkt. Nos. 37-39.) In that motion, Defendants argued that Plaintiffs' claims were inadequately pleaded (Dkt. No. 38); they did not, however, seek an order compelling Plaintiffs to arbitrate their claims. In March 2022, the District Court denied Defendants' motion to dismiss "in its entirety." (Dkt. No. 46 at 37.)

Five months later, after discovery had begun in earnest, Defendants moved to compel arbitration. (Dkt. Nos. 72-75 (Grubhub), 76-79 (Uber and Postmates).) Defendants' motions did not seek an order compelling *every* Plaintiff to arbitrate; indeed, no Defendant argued that Plaintiff Drewey should be compelled to arbitrate his claims against Defendants. Although Uber argued that Drewey's claims should be stayed pending resolution of arbitration between the other Plaintiffs and Defendants, Grubhub tellingly did not make that argument. (Dkt. Nos. 73, 77.)

On March 16, 2023, the District Court denied Defendants' motions. (Dkt. No. 103.) Specifically, the District Court found that (i) Grubhub failed to demonstrate that *any* Plaintiff entered into an agreement with it to arbitrate; (ii) Uber and Postmates failed to demonstrate that Plaintiff Bensimon entered into an agreement with them to arbitrate; and (iii) even if Defendants had demonstrated agreements to arbitrate (they hadn't), their arbitration provisions could not be enforced because

4

"Plaintiffs' claims are completely unrelated to their use of defendants' platforms" and thus outside the permissible scope of those provisions. (*Id.* at 16-30.)

## ARGUMENT

Defendants' motion should be denied for the following three reasons.

*First*, expediting Defendants' appeal would not conserve judicial resources, reduce the cost of litigating this matter for any party, or prevent Defendants from suffering undue prejudice. As Defendants concede (at 14), Plaintiff Drewey "did not agree to any arbitration agreement with any [Defendant], and so his claims will proceed in the district court regardless of how these appeals are resolved." Plaintiff Drewey asserts *the same claims* against *the same Defendants* on behalf of *the same putative class* as Plaintiffs-Appellees. Accordingly, even if Defendants prevail on appeal tomorrow (they shouldn't prevail at all), this case would still be litigated in the same way at the district-court level: plaintiffs will still seek certification of the same classes with respect to the same claims against the same Defendants, Defendants will still seek summary judgment on those same claims, and plaintiffs will still oppose that motion.[2]

---

[2] To be clear, Plaintiff Drewey is not a member of one of the three classes, but, in the event that Defendants prevailed on appeal, plaintiffs would move for leave to amend their complaint to substitute Plaintiffs-Appellees for individuals who are members of that class but not bound by Defendants' arbitration provisions.

5

Defendants' argument to the contrary—that the "proceedings will be significantly narrower if this Court compels arbitration with respect to Appellees"—does not withstand any scrutiny. To be sure, if Plaintiffs-Appellees are compelled to arbitrate their claims, there could be fewer named plaintiffs and, as Defendants say, the class definitions may need to be narrowed to exclude some individuals who used Defendants' platforms. But that would not materially impact the claims sought or relief pursued by plaintiffs, nor would it materially impact which motions plaintiffs filed, or which arguments were made in those motions. Indeed, because Plaintiffs' claims do not arise out of their use of Defendants' platforms, narrowing the class definitions to exclude individuals who used Defendants' platforms would not narrow the issues in this case in any meaningful way.

In light of these facts, Defendants' assertion (at 12) that expedited consideration is "necessary to ensure that the benefits of arbitration are not irrevocably lost" rings hollow. Indeed, if Defendants' view were that they would somehow be irreparably harmed if their appeal were not expedited, they presumably would have (i) moved to compel arbitration when moving to dismiss, (ii) moved to compel arbitration before engaging in discovery for five months, or (iii) sought to stay the proceedings below. *See, e.g.*, *Doe v. Trump Corp.*, 2020 WL 2538400, at *1 (S.D.N.Y. May 18, 2020) (setting forth relevant factors, including irreparable harm). They did not do any of these things.

6

*Second*, Defendants' policy arguments for expediting this appeal are inapplicable to the facts of this case. Relying on out-of-circuit cases contrary to this Court's precedents regarding "automatic stays of district court litigation when a party takes a § 16(a) appeal," Defendants assert that "the purpose of the [FAA's] interlocutory appeal" is to "ensur[e] that the parties do not litigate their case in two fora"—*i.e.*, litigation in the district court, then arbitration following a successful appeal. Even if Defendants were correct, the concern that they identify is not implicated where the appeal covers only a subset of the case, such that the parties will proceed in court regardless of what happens on appeal. *See, e.g.*, *In re Managed Care Litig.*, 2001 WL 664391, at *1-2 (S.D. Fla. June 12, 2001) (distinguishing *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504 (7th Cir. 1997)). That is the situation here because the parties *agree* that Drewey's claims must proceed in court. Accordingly, *the only way* Defendants will be litigating the case "in two fora" would be because they want to, *i.e.,* they prevail on this appeal, obtain an order compelling arbitration as to just some plaintiffs, and then have to arbitrate and litigate.

Defendants' policy argument should be rejected for the further reason that it proves too much. If the purported "congressional judgment that the enforcement of an arbitration agreement is 'important enough' to be 'vindicable immediately'" were sufficient to justify expediting an appeal, then every appeal of an order denying a motion to compel arbitration would be expedited. Such a rule would be inconsistent

7

with Local Rule 31.2, which limits automatic placement on the Expedited Appeals Calendar to "threshold dismissals," defined as "a judgment or order of a district court dismissing a complaint solely for . . . (A) lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); (B) failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6); or (C) filing a frivolous complaint of for any other ground specified in 28 U.S.C. § 1915(e)(2)."

*Third*, Plaintiffs-Appellees would be prejudiced if Defendants' motion were granted. Plaintiffs are in the midst of preparing their motion for class certification. It would be unfair to force Plaintiffs-Appellees to brief and argue Defendants' appeal at the same time on an expedited basis, especially where Defendants have already had more than a month to consider their appellate arguments.

## **CONCLUSION**

Plaintiffs-Appellees respectfully request, for the foregoing reasons, that the Court deny Defendants' motion to expedite.

8

Dated: April 27, 2023


By: */s/ Velvel (Devin) Freedman*
Velvel (Devin) Freedman
Edward Normand
Stephen Lagos
**FREEDMAN NORMAND FRIEDLAND LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
vel@fnf.law
tnormand@fnf.law
slagos@fnf.law


Greg Frank
Marvin L. Frank
Asher Hawkins
**FRANK LLP**
305 Broadway, Suite 700
New York, NY 10007
gfrank@frankllp.com

*Counsel for Plaintiffs-Appellees*

9

# **CERTIFICATE OF COMPLIANCE**

This response complies with the length limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). The response contains 1,746 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). This response complies with the format requirements of Federal Rule of Appellate Procedure 27(d)(1)(E). The response has been prepared in a proportionally spaced typeface using MS Word 2023 in a 14-point Times New Roman font.

By: */s/ Velvel (Devin Freedman*
Velvel (Devin) Freedman

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2023, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

By: */s/ Velvel (Devin Freedman*
Velvel (Devin) Freedman