# 23-521(L)

## 23-522 (CON)

## United States Court of Appeals
## for the Second Circuit

MARIAM DAVITASHVILI, *individually and on behalf of all others similarly situated*,
ADAM BENSIMON, *individually and on behalf of all others similarly situated*,
*Plaintiffs-Appellees*,

PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, AND NATHAN OBEY
*Consolidated Plaintiffs-Appellees*,

MIA SAPIENZA, AND MALIK DREWEY,
*Plaintiffs*,

– v. –

GRUBHUB INC., DBA SEAMLESS, POSTMATES INC., AND UBER TECHNOLOGIES, INC.,
*in its own right and as parent of wholly owned subsidiary* UBER EATS,
*Defendants-Appellants*,

*DoorDash Inc.*,
*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### BRIEF OF DEFENDANTS-APPELLANTS
### UBER TECHNOLOGIES, INC. AND POSTMATES, LLC

Adam G. Unikowsky
Elizabeth B. Deutsch
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000

*Attorneys for Defendants-Appellants Uber Technologies, Inc., and Postmates, LLC*

## CORPORATE DISCLOSURE STATEMENT

Uber Technologies, Inc. is a publicly held corporation and not a subsidiary of any entity. Based solely on SEC filings regarding beneficial ownership of the stock of Uber, Uber is unaware of any shareholder who beneficially owns more than 10% of Uber's outstanding stock.

The entity formerly known as Postmates Inc. was acquired by Uber on December 1, 2020. Postmates, LLC is a wholly owned subsidiary of Uber.

There is no corporate entity known as "Uber Eats."

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ..........................................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................3

STATEMENT OF THE CASE..................................................................3

    A.    The Parties' Arbitration Agreement And Delegation Clause ..............3

    B.    Litigation History ........................................................6

SUMMARY OF ARGUMENT .............................................................11

STANDARD OF REVIEW ...................................................................13

ARGUMENT ...................................................................................13

I.    The District Court Erred In Refusing To Enforce The Delegation Clause...................................................................................13

    A.    A Delegation Clause Must Be Enforced Unless A Party Specifically Challenges It.................................................13

    B.    Plaintiffs-Appellees Did Not Specifically Challenge The Delegation Clause...............................................................16

    C.    The District Court's Reasoning Regarding The Arbitration Agreement As A Whole Does Not Justify Invalidating The Delegation Clause.................................................................21

    D.    *Gingras* Does Not Support The District Court's Approach................24

II.    The District Court Erred In Finding That The Parties' Dispute Was Not Arbitrable.............................................................................29

CONCLUSION .................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022) ........................18, 19

*Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2d Cir. 2019) ...............24, 25, 26, 27

*Goss v. Smiley*, No. 18 C 7407, 2019 WL 4958215 (N.D. Ill. Oct. 8, 2019) .........31

*Hearn v. Comcast Cable Communications, LLC*, 992 F.3d 1209 (11th Cir. 2021) ................................................................................................32

*Hearn v. Comcast Cable Communications, LLC*, 415 F. Supp. 3d 1155 (N.D. Ga. 2019) ................................................................................32

*Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021) ....................................................26

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ...................................................................................1, 8, 11, 20, 22, 24

*Jampol v. Blink Holdings, Inc.*, No. 20 CIV. 2760, 2020 WL 7774400 (S.D.N.Y. Dec. 30, 2020) ...................................................................31

*In re Jiffy Lube International, Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) .........................................................................32

*Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265 (2d Cir. 2015) .........................13

*McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264 (S.D.N.Y. 2021)...................31

*Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016)...................28

*Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645 (2d Cir. 2004)...............30, 33, 35

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)...............2, 11, 13, 14, 15, 16, 18, 19, 20, 21

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020)................................. 31-32

*Singh v. Uber Technologies, Inc.*, No. 21-3234, -- F.4th --, 2023 WL 3086603 (3d Cir. Apr. 26, 2023) ........................................................28

iii

*Smith v. Steinkamp*, 318 F.3d 775 (7th Cir. 2003)...................................................31

*Spates v. Uber Technologies, Inc.*, No. 21-CV-10155, 2023 WL 3506138
    (S.D.N.Y. Mar. 31, 2023) ...............................................................................28

*United States v. Restrepo*, 986 F.2d 1462 (2d Cir. 1993) ........................................17

*Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003)....................................................30

*Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016)....................... 31-32

### STATUTES

9 U.S.C. § 2...............................................................................................................14

9 U.S.C. § 16(a) .........................................................................................................2

28 U.S.C. § 1332(d)(2).............................................................................................2

### OTHER AUTHORITIES

Brief for Plaintiffs-Appellees, *Gingras v. Think Finance, Inc.*, No. 16-
    2019-cv(L) (2d Cir. Dec. 30, 2016), ECF No. 164, 2016 WL 7537794 ............25

**INTRODUCTION**

Plaintiffs-Appellees agreed to Uber Technologies, Inc.'s Terms of Use, which contain an arbitration agreement with a class action waiver ("Arbitration Agreement"). Nonetheless, they filed a class action lawsuit against Uber Technologies, Inc. and its wholly owned subsidiary, Postmates, LLC[1] (together, "Uber").

After Uber moved to compel arbitration, Plaintiffs-Appellees argued that the Arbitration Agreement is unenforceable. But Uber's Terms of Use include a provision delegating arbitrability disputes to the arbitrator ("Delegation Clause"). Pursuant to that clause, the arbitrator should decide whether the Arbitration Agreement is enforceable, not the district court.

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). That principle is subject to a single, narrow exception: if a plaintiff *specifically* challenges the enforceability of a delegation provision, and *prevails* on that specific challenge, the court may decide

---

[1] The entity formerly known as Postmates Inc. was acquired by Uber Technologies, Inc. on December 1, 2020. Postmates, LLC is a wholly owned subsidiary of Uber Technologies, Inc. There is no corporate entity "Uber Eats."

1

arbitrability. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Here, all Plaintiffs-Appellees did was mention the Delegation Clause in a footnote, which stated, without analysis, that *Postmates'* enforcement of the Delegation Clause would be unconscionable. That footnote did not satisfy *Rent-A-Center*'s requirement of a "specific" challenge to the Delegation Clause itself and was meritless in any event. The district court erred in disregarding the Delegation Clause and usurping the arbitrator's authority to decide the enforceability of Uber's Arbitration Agreement as to Plaintiffs-Appellees' claims.

The district court then proceeded to hold that the parties' dispute was not arbitrable on the ground that it lacked any "nexus" to the Terms of Use. Not only did the district court lack authority to decide this issue because of the Delegation Clause, but its holding was wrong, too. There is a close nexus between the Terms of Use and this lawsuit. The amended complaint seeks, among other relief, an injunction that would allegedly alter pricing on (and off) Uber's platform—a topic governed by the very Terms of Use in question.

This Court should reverse the decision below and remand with instructions to compel arbitration.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332(d)(2). This Court has jurisdiction under 9 U.S.C. § 16(a) over an interlocutory appeal of an order

denying a motion to compel arbitration. The district court denied Defendants-Appellants' motion to compel arbitration on March 16, 2023. Defendants-Appellants timely filed a notice of appeal on April 7, 2023.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.     Did the district court err in refusing to enforce the parties' Delegation Clause—an agreement to arbitrate threshold disputes over arbitrability—even though Plaintiffs-Appellees failed to specifically challenge the Delegation Clause?

II.     Did the district court err in holding that the parties' dispute is not arbitrable?

## STATEMENT OF THE CASE

### A. The Parties' Arbitration Agreement And Delegation Clause

Plaintiffs-Appellees John Boisi, Mariam Davitashvili, Philip Eliades, Nathan Obey, and Jonathan Swaby have filed a putative class action against Uber Technologies, Inc., and its wholly owned subsidiary, Postmates, LLC. However, each of them previously opened and continued to use their accounts with Uber, which entailed entry into an Arbitration Agreement with a class action waiver.

Each Plaintiff-Appellee agreed to Uber's December 2021 Terms of Use by affirmatively checking a box stating that he or she had "reviewed and agreed to"

3

these terms and then clicking "Confirm."[2]   The Terms state that they govern

consumers' "access or use" of services "made available … by Uber Technologies,

Inc. and its subsidiaries." A-193 (Sullivan Decl. Ex. F at 55). Postmates is one of

those subsidiaries. *See* A-170–73 (Sullivan Decl. ¶¶ 17–23).[3]

Uber's December 2021 Terms of Use contain an agreement to arbitrate and a

provision delegating threshold arbitrability disputes to an arbitrator. Section 1 of the

Terms of Use states in all capital letters:

> IMPORTANT: PLEASE BE ADVISED THAT THIS
> AGREEMENT CONTAINS PROVISIONS THAT GOVERN
> HOW CLAIMS BETWEEN YOU AND UBER CAN BE
> BROUGHT, INCLUDING THE ARBITRATION
> AGREEMENT (SEE SECTION 2 BELOW). PLEASE
> REVIEW THE ARBITRATION AGREEMENT BELOW
> CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL
> DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND,
> WITH LIMITED EXCEPTIONS, THROUGH FINAL AND
> BINDING ARBITRATION (AS DESCRIBED IN SECTION 2
> BELOW). BY ENTERING INTO THIS AGREEMENT, YOU
> EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ
> AND UNDERSTAND ALL OF THE TERMS OF THIS
> AGREEMENT AND HAVE TAKEN THE TIME TO
> CONSIDER THIS IMPORTANT DECISION.

---

[2] *See* A-182 (Declaration of Jennifer Sullivan ¶ 39, Case No. 20-cv-3000 (S.D.N.Y. Aug. 26, 2022), Dkt. 79 ("Sullivan Decl.")); A-186 (*id.* Ex. D at 3) (Boisi checkbox consent); A-187 (*id.* Ex. D at 4) (Davitashvili checkbox consent); A-188 (*id.* Ex. D at 5) (Eliades checkbox consent); A-189 (*id.* Ex. D at 6) (Obey checkbox consent); A-190 (*id.* Ex. D at 7) (Swaby checkbox consent).

[3] Because the Terms of Use cover both Uber and Postmates, the term "Uber" will refer to both Uber and Postmates for the remainder of this brief, except where noted.

A-193–94 (*Id.* Ex. F at 55–56).

The second section of the Terms of Use, labeled "Arbitration Agreement," provides:

> By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis as set forth in this Arbitration Agreement[.]

A-194 (*Id.* Ex. F at 56). Section 2(a)(1), titled "Covered Disputes," defines the universe of disputes subject to arbitration:

> Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless of whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to the Terms and regardless of whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law.

A-194–95 (*Id.* Ex. F at 56–57). Section 2(a)(2) provides that "Covered Disputes" "shall be resolved only in individual arbitration," without resort to "a class, collective coordinated, consolidated, and/or representative action." *See* A-194–95 (*Id.* Ex. F at 56–57). Section 2(b) of the Arbitration Agreement enumerates several "Exceptions to Arbitration," including claims brought in small claims court, claims

5

involving sexual assault or harassment, and intellectual property or trade secrets claims seeking injunctive or equitable relief. A-198 (*Id.* Ex. F at 60). "Such claims may be brought and litigated in a court of competent jurisdiction." *Id.*

Section 2(a)(4) of the Arbitration Agreement contains a provision entitled "**<u>Delegation Clause</u>**," in bolded and underlined text. The Delegation Clause grants the arbitrator "exclusive authority" to resolve "any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable." A-197 (*Id.* Ex. F at 59). That Delegation Clause also provides:

> An arbitrator shall also have exclusive authority to resolve *all threshold arbitrability issues, including issues relating to whether the Terms are applicable, [or] unconscionable[.]*

*Id.* (emphasis added).

## B. Litigation History

Plaintiffs-Appellees' amended class action complaint alleges that menu price parity provisions in Uber's agreements with restaurants violate federal and state law. *See* A-32–35 (Am. Compl. ¶¶ 55–61, Dkt. 28). The complaint seeks, among other relief, "an injunction to enjoin Defendants from continuing" to use these contractual terms. A-74 (*Id.* at 55, Prayer for Relief (d)).

6

On August 26, 2022, Uber moved to compel arbitration under the Terms of Use. *See* Dkt. 77. On March 16, 2023, the district court denied the motion. The court concluded that Plaintiffs-Appellees had entered into arbitration agreements, which contained "clear[] and unmistakable[]" delegation clauses, with both Uber and Postmates, but it declined to enforce those agreements. A-260 (Opinion Denying Mot. to Compel Arbitration at 24, Dkt. 103 (Kaplan, J.) ("Op.")).

The court first held that "Uber has set forth evidence—and Plaintiffs do not dispute—that Plaintiffs Boisi, Davitashvili, Eliades, Obey, and Swaby expressly manifested assent to [Uber's December 2021 Terms of Use] through clickwrap agreements." A-252–53 (Op. at 16–17). As the district court explained, each of those Plaintiffs affirmatively clicked a box saying they had reviewed and agreed to the Terms of Use. A-253 (*Id.* at 17). As such, the district court held that Plaintiffs-Appellees had "manifest[ed] assent to Uber's [T]erms of [U]se, which contained an arbitration clause, delegation clause, and class action waiver." A-254 (*Id.* at 18).

The court further held that "[t]he arbitration clause in Uber's December 2021 [T]erms of [U]se covers certain disputes with *Postmates* also." *Id.* (emphasis added). The Terms "expressly define 'Uber' to include 'its subsidiaries,'" so the Arbitration Agreement's requirement to "resolve any claim … against Uber" includes claims against Postmates, which became "a wholly owned subsidiary" in 2020. *Id.* "Accordingly," the district court held, both Uber and Postmates "satisfied [their]

7

initial burden of 'demonstrating that an agreement to arbitrate was made'" between them and Plaintiffs-Appellees. *Id.* (citation omitted).

Next, the district court turned to the question of arbitrability. As the district court recognized, the parties disputed "the threshold issue of arbitrability"—*i.e.*, whether the Arbitration Agreement was enforceable and covered the parties' dispute. A-260 (*Id.* at 24). Because the parties' Arbitration Agreement contained a Delegation Clause, Uber asked the court to compel arbitration to allow the arbitrator to decide any arbitrability dispute.

The district court refused to enforce the Delegation Clause. The district court accurately recited the legal standard governing delegation provisions: "If … the [parties'] agreement contains a provision that 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, such a delegation must be enforced 'even if the court thinks that the movant's arbitrability claim is wholly groundless.'" A-250 (*Id.* at 14 & nn.47–48) (quoting *All. Bernstein Inv. Rsch. & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *Henry Schein, Inc.*, 139 S. Ct. at 526). And it accurately stated that Uber's Arbitration Agreement "clearly and unmistakably provides that 'all threshold arbitrability issues,' … will be decided by an arbitrator." A260–61 (*Id.* at 24–25). But rather than enforce that

8

clear and unmistakable Delegation Clause, the district court improperly disregarded it.

Plaintiffs-Appellees' brief opposing arbitration contained a single passing reference to the Delegation Clause, which appeared in a footnote in service of a narrow argument that *Postmates* should not be able to enforce *Uber's* post-acquisition Terms because Plaintiffs-Appellees' claims arose pre-acquisition. Citing this footnote, the district court concluded that Plaintiffs-Appellees had lodged a "specific attack on the delegation provision" which was "sufficient to make the issue of arbitrability one for the federal court." A-261 (*Id.* at 25) (quotation marks omitted). The district court offered no explanation for this conclusion other than a citation to a single case addressing tribal payday lending contracts. A-261 (*Id.* at 25 & n.96) (citing *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 126 (2d Cir. 2019)).

Exercising authority over the parties' arbitrability dispute, the court found the dispute was not arbitrable. The court described the Arbitration Agreement's potential coverage as "infinite." A-262 (*Id.* at 26). If the Arbitration Agreement were "enforced according to [its] terms," the court stated, it would "require arbitration of *any* claims" between Uber and its users, "including claims without any nexus" at all to the Terms of Use. *Id.*

Based on the court's construction of the Terms of Use as "requir[ing] a user of defendants' platforms to arbitrate claims . . . hav[ing] nothing to do with the

plaintiff's use of the platform," it held that no contract had been formed under the Arbitration Agreement as to any such claims, or, in the alternative, that enforcement of the Agreement as to such claims would be unconscionable. A-265 (*Id.* at 29). The court therefore held that the Arbitration Agreement would apply only to those claims with a "nexus to the underlying contracts." *Id.*

The district court then deemed Plaintiffs-Appellees' claims to be "completely unrelated to their use of defendants' platforms." A-263 (*Id.* at 27). On that basis, the court found that, "[a]s a matter of contract formation," "no reasonable person" would have, upon signing, believed that he or she needed "to arbitrate literally every possible dispute he or she might have with the service provider." A-263–64 (*Id.* at 27–28) (quotation marks omitted). In the alternative, the court posited, "it would be unconscionable to enforce" the Arbitration Agreement "with respect to claims untethered to defendants'" Terms of Use. A-264 (*Id.* at 28). The court went on to reject application of the Terms' class action waiver for the same reasons. A-265 (*Id.* at 29).

On April 7, 2023, Uber timely noticed its appeal. *See* A-267 (Dkt. No. 105).[4]

---

[4] Uber has not appealed the district court's order as to Adam Bensimon. *See* A-267 (Dkt. No. 105). Therefore, "Plaintiff-Appellee" Bensimon, as denoted is the caption, is not an "Appellee" as to Uber's appeal.

## SUMMARY OF ARGUMENT

I. The district court erred in refusing to enforce the parties' clear and unmistakable Delegation Clause. A delegation provision is valid and enforceable unless the plaintiff "specifically" challenges it. *Rent-A-Ctr.*, 561 U.S. at 70–72. Plaintiffs leveled no "specific" attack on the Delegation Clause—mentioning it only in a footnote, only with regard to Postmates (not Uber), and without any argument as to why, specifically, the Delegation Clause was allegedly unenforceable.

Although the district court (wrongly) believed that the parties' dispute was not arbitrable, that conclusion did not justify ignoring the Delegation Clause. In *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–30 (2019), the Supreme Court held that courts must enforce parties' delegation provisions even if the courts believe the arguments in favor of arbitrability to be "wholly groundless." Here, regardless of the district court's view of Uber's arbitrability argument, that argument was for the arbitrator to decide.

II. This Court should not decide the parties' arbitrability dispute. That issue is for the arbitrator. But if this Court reaches the issue, it should hold that Plaintiffs' claims are arbitrable.

The district court characterized the Arbitration Agreement as "infinite," meaning that it covers *all* claims against Uber, including those "without any nexus" to the Terms of Use. That characterization was inaccurate: the Arbitration

11

Agreement contains just four enumerated categories of "Covered Disputes," which include claims arising from or relating to services offered by Uber and the user's *relationship* with Uber, and expressly carves out certain disputes from arbitration.

Because of the Arbitration Agreement's alleged overbreadth, the district court held that the Arbitration Agreement's scope extends only to claims with a "nexus" to Uber's Terms of Use. Even assuming the district court's understanding of the Arbitration Agreement's scope were correct, Plaintiffs-Appellees' claims are arbitrable. Plaintiffs-Appellees challenge certain contractual provisions in Uber's and Postmates' contracts with restaurants and allege that those provisions cause consumers, like Plaintiffs-Appellees, to pay supracompetitive prices for meals. While Plaintiffs-Appellees may not seek damages for meals ordered through the Uber or Postmates platforms, they *do* seek an injunction that will, under Plaintiffs-Appellees' theory, alter the price of meals ordered on (and off) the Uber and Postmates platforms. That pricing is part and parcel of the core services—the ordering and arranging of delivery of meals—that Uber provides its users under the Terms of Use that contain the Arbitration Agreement and Delegation Clause. Therefore, there is a nexus between Plaintiffs-Appellees' claims and the Terms of Use.

## STANDARD OF REVIEW

"A district court's denial of a motion to compel arbitration is reviewed *de novo*." *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 269 (2d Cir. 2015) (quotation marks and citation omitted).

## ARGUMENT

The district court should have enforced the Delegation Clause and allowed the arbitrator to resolve any arbitrability dispute. The court erred in exercising authority over that threshold dispute, and further erred in finding that Plaintiffs-Appellees' claims are not arbitrable. This Court should reverse the district court's order and remand with instructions to compel arbitration of the parties' dispute.

## I. The District Court Erred In Refusing To Enforce The Delegation Clause.

Under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the district court should have enforced the Delegation Clause because Plaintiffs-Appellees did not specifically challenge it. And even if Plaintiffs-Appellees had specifically challenged it, that challenge should have failed.

### A. A Delegation Clause Must Be Enforced Unless A Party Specifically Challenges It.

Uber's Terms of Use contain an Arbitration Agreement with a Delegation Clause—that is, "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr.*, 561 U.S. at 68. In *Rent-A-Center*, the Supreme Court held that "unless [a plaintiff] challenged the delegation provision

13

specifically," a federal court "must treat it as valid" and "enforce it." *Id.* at 72.

As the Supreme Court explained in *Rent-A-Center*, the requirement to enforce delegation provisions unless they are specifically challenged follows from the plain text of the Federal Arbitration Act (FAA). The FAA directs federal courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA's command to enforce arbitration agreements applies "*without mention* of the validity of the contract in which it is contained." *Rent-A-Ctr.*, 561 U.S. at 70. As such, in the ordinary case involving a contract dispute that contains an arbitration clause, "a party's challenge to *another* provision of the contract, or to the contract *as a whole*, does not prevent a court from enforcing the specific agreement to arbitrate." *Id.* (emphasis added). To the contrary, the FAA "require[s] the basis of the challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* at 71.

"An agreement to arbitrate a gateway issue," *i.e.*, a delegation provision, "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. As such, a challenge to *another* provision of the arbitration agreement, or the arbitration agreement *as a whole*, is not a permissible basis for denying enforcement of a delegation provision. Unless

14

the plaintiff has "challenged the delegation provision specifically," the court "must treat it as valid," and "must enforce it," "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72.

To make out a sufficiently "specific" challenge, a plaintiff must do more than merely "[n]ote[] the existence of the delegation provision" in the context of broader arguments about the arbitration agreement's overall validity. *Id.* at 74. A plaintiff must explain with particularity why the delegation provision *itself* is invalid. For example, in *Rent-A-Center*, the plaintiff (Jackson) and his employer (Rent-A-Center) had entered into an arbitration agreement containing a delegation provision. Jackson brought an employment discrimination claim, and Rent-A-Center moved to compel arbitration. Jackson argued that the arbitration agreement as a whole was unconscionable because it limited the number of depositions each party could take and required the parties to split the cost of the arbitration. *Id.*

The Supreme Court held that the parties' delegation provision must be enforced because Jackson had not "specifically" challenged it. The Court explained that to make a "specific" unconscionability challenge to the delegation provision based on the discovery procedures, "Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable." *Id.* The Court continued: "That would be, of course, a much more difficult argument to sustain than the argument

15

that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable." *Id.* Similarly, "the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination." *Id.* Because Jackson "did not make any arguments specific to the delegation provision," and instead "argued that the fee-sharing and discovery procedures rendered the *entire* Agreement invalid," the delegation provision was valid, and the unconscionability dispute was required to be decided by the arbitrator. *Id.*

### B. Plaintiffs-Appellees Did Not Specifically Challenge The Delegation Clause.

Plaintiffs-Appellees contend that the Arbitration Agreement is either inapplicable to their complaint or unconscionable. This is exactly the type of argument that the Delegation Clause reserves for the arbitrator: it recites that the arbitrator has "exclusive authority" over "issues relating to whether the Terms are applicable" or "unconscionable." A-197 (Sullivan Decl. Ex. F at 59).

The district court should have enforced Uber's Delegation Clause and compelled arbitration because Plaintiffs-Appellees failed to "specifically" challenge it, as *Rent-A-Center* requires.

Plaintiffs-Appellees' purported challenge to the Delegation Clause appears in a single footnote in their opposition brief to Uber's motion to compel arbitration.

16

That footnote, in turn, appears in a section of the brief in which Plaintiffs-Appellees argued that it would be unconscionable for Postmates to enforce Uber's Terms of Use. Their theory was that "Uber and Postmates imposed the Uber [Terms of Use] on the Platform Plaintiffs during the pendency of this litigation, without providing any notice to Plaintiffs' counsel." A-220 (Pls.' Opp. to Mot. to Compel Arbitration at 33, Dkt. 87 ("Pls.' Opp.")). According to Plaintiffs-Appellees, "[u]nder the circumstances, it would be unconscionable to permit Postmates to enforce the Uber [Terms of Use], or any component thereof, against Plaintiffs." A-221 (*Id.* at 34) (footnote omitted). This sentence was accompanied by the footnote in question, which read: "For the avoidance of doubt, the Platform Plaintiffs challenge the validity of the Delegation Clause itself, on the grounds that it would be unconscionable to permit Postmates to enforce that clause." A-221 (*Id.* at 34 n.9) (internal citation omitted).

The district court held that this footnote satisfied *Rent-A-Center*'s requirement that a plaintiff level a "specific attack on the delegation provision." A-261 (Op. at 25) (quotation marks omitted). That holding was wrong for four reasons.

*First*, the purported "specific attack on the delegation provision" appeared only in a footnote. This Court does "not consider an argument mentioned only in a footnote to be adequately raised or preserved." *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993).

*Second*, Plaintiffs-Appellees' footnote argued only that the district court should not "permit *Postmates* to enforce" the Delegation Clause. A-221 (Pls.' Opp. at 34 n.9) (emphasis added). The footnote did not raise or preserve any objection to permitting *Uber* to enforce the Delegation Clause. As such, this footnote does not provide even an arguable basis for the court to decide whether Plaintiffs' claims against Uber are arbitrable.

*Third*, that footnote did not "specifically" challenge the Delegation Clause. Plaintiffs-Appellees argued that "it would be unconscionable to permit Postmates to enforce Uber TOU, or any component thereof" because Uber had acquired Postmates during the pendency of litigation. *Supra* at 17. As a footnote to the phrase "any component thereof," Plaintiffs-Appellees stated without elaboration that they were challenging the Delegation Clause. *See id.* That is not enough.

Under *Rent-A-Center*, a plaintiff cannot just "[n]ote[] the existence of the delegation provision" or rely upon arguments pertaining to the broader agreement to "specifically" challenge a delegation provision. 561 U.S. at 74. In other words, a plaintiff cannot "simply recycle[] the same arguments that pertain to the enforceability of the agreement as a whole." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (quoting *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 886 (6th Cir. 2021)). "[A] party's challenge to a delegation clause must rest, in part, on *different factual or legal grounds* than the ones

18

supporting its challenge to the arbitration agreement as a whole." *Id.* (emphasis added).

Here, Plaintiffs-Appellees did nothing close. They did not even advance a challenge specific to the Arbitration Agreement. Plaintiff-Appellees argued only that the *Terms of Use as a whole* were unconscionable and, because the Delegation Clause was a component of the Terms of Use, it, too, was unconscionable. Nowhere did Plaintiffs-Appellees set out any "different factual or legal grounds" as to why it would be unconscionable for the arbitrator, and not the Court, to decide any issue of arbitrability—they never explained any reason why that might be so. As in *Rent-A-Center*, Uber's Delegation Clause must therefore be enforced.

*Fourth*, to satisfy *Rent-A-Center*, it is not enough for a plaintiff merely to make a specific challenge to a delegation provision. The plaintiff must *win* that challenge. In other words, the district court must enforce the delegation provision unless the court actually finds the provision to be unenforceable for the specific reasons advanced by the plaintiffs. *See Rent-A-Center*, 561 U.S. at 71 ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, *the federal court must consider the challenge*." (emphasis added)).

In this case, while the court—incorrectly—held that Plaintiffs-Appellees had "assert[ed]" a "'specific attack'" on the Delegation Clause, the court did not find that this challenge was meritorious. *See* A-261 (Op. at 25). Moreover, elsewhere in its

19

opinion, the district court held that a contract *had* been validly formed with Postmates users under Uber's December 2021 Terms. *See* A-254 (*Id.* at 18). In other words, Plaintiffs-Appellees actually *lost* the argument in the footnote—that the Arbitration Agreement could not be enforced as to Postmates. Hence, the district court did not find that Plaintiffs-Appellees had prevailed on their supposed challenge to the Delegation Clause, as *Rent-A-Center* requires.

Although the district court did go on to state that the Arbitration Agreement is unconscionable, the court said so on the ground that the Arbitration Agreement was supposedly too broad—a ground that is, as explained below, completely unrelated to Plaintiffs-Appellees' unconscionability argument regarding the Delegation Clause. In the absence of a *specific* and *successful* challenge to the Delegation Clause, that Clause should have been enforced.

The district court's reasoning, if upheld by this Court, would effectively render *Rent-A-Center*—and delegation provisions in general—a dead letter. Litigants could avoid delegation provisions merely by dropping rote, unexplained footnotes purporting to challenge them. Such a holding would make meaningless *Rent-A-Center*'s admonition that courts "must treat" delegation provisions as valid unless they are challenged "specifically." 561 U.S. at 72. And it would nullify the long line of Supreme Court cases upholding the enforceability of delegation provisions. *See, e.g.*, *Henry Schein*, 139 S. Ct. at 529 ("When the parties' contract

20

delegates the arbitrability question to an arbitrator, a court may not override the contract."); *Rent-A-Ctr.*, 561 U.S. at 69 (citing a "line of cases" upholding the enforceability of delegation provisions). This Court should adhere to those precedents and reject the district court's faulty approach.

    **C.**    **The District Court's Reasoning Regarding The Arbitration Agreement As A Whole Does Not Justify Invalidating The Delegation Clause.**

The district court held that the Arbitration Agreement as a whole was unenforceable because it was supposedly an "'infinite arbitration clause,'" which "would require arbitration of *any* claims between defendants and … Plaintiffs, including claims without any nexus to the agreements containing the clauses." A-262 (Op. at 26). The court further held that "Plaintiffs' claims are completely unrelated to their use of defendants' platforms." A-263 (*Id.* at 27).

Plaintiffs-Appellees, however, did not and could not claim below that their "infinite arbitration clause" argument was a basis to deny enforcement of the *Delegation Clause*, and the district court did not and could not make any such finding. None of the cases cited by the court regarding "infinite arbitration clauses" dealt with arbitration agreements containing delegation clauses—meaning, in those cases, it was proper for the court to decide arbitrability issues. That is not the case here. Further, none of the district court's reasoning regarding the so-called "infinite arbitration clause" casts any doubt on the enforceability of the Delegation Clause.

In finding the Arbitration Agreement unconscionable, the district court first held that, "[a]s a matter of contract formation, New York law provides that a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties. [W]here some absurdity has been identified or the contract would otherwise be unenforceable either in whole or in part, courts may as a matter of interpretation carry out the intention of [the] contract by transposing, rejecting, or supplying words to make the meaning of the contract more clear." A-263–64 (*Id.* at 27–28) (quotation marks and citations omitted) (alterations in original). The court then noted that "no reasonable person would think" that he or she was required "to arbitrate literally every possible dispute he or she might have with the service provider, let alone all of [its] affiliates." A-264 (*Id.* at 28) (quotation marks omitted) (alteration in original).

Whatever the merit of the court's reasoning on this point, it does not touch the Delegation Clause. There is nothing absurd or commercially unreasonable about the Delegation Clause. It is a garden-variety provision delegating arbitrability disputes to an arbitrator. Even assuming that the district court was right that the Arbitration Agreement was "absurd" and "commercially unreasonable" (which Uber does not concede), the point of the parties' Delegation Clause is to make clear that it will be up to the *arbitrator* to decide this question. *See Henry Schein, Inc.*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a

22

court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue.").[5]

The district court next held that "it would be unconscionable to enforce defendants' arbitration clauses with respect to claims untethered to defendants' respective terms of use." A-264 (Op. at 28). Again, whatever the merit of this position, it does not cast doubt on the Delegation Clause. The district court did not explain why there would be any unfairness in allowing the arbitrator, rather than the court, to decide Plaintiffs-Appellees' unconscionability argument in the first instance.

Perhaps the district court believed that Uber's arbitrability argument was *so* weak that the court could or should decide the issue for itself rather than send it to the arbitrator. Of course, Uber strongly disagrees with the premise that its arbitrability argument is weak. But even accepting that premise, the district court's

---

[5] The district court erred in characterizing its holding as "a matter of contract formation." A-263 (Op. at 27). As the court made clear earlier in its opinion, an arbitration agreement was formed. A-252 (*Id.* at 16) (noting that all Plaintiffs-Appellees had "assented to Uber's December 2021 [a]rbitration [c]lause"). In deciding arbitrability, the district court questioned *not* whether the Arbitration Agreement was formed, but how it should be *interpreted*—as the court made clear later in the same sentence, when it held that "a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." A-263–64 (*Id.* at 27–28) (quotation marks omitted). In any event, even if viewed as a question of contract formation, there is no doubt that *an agreement to delegate arbitrability* was formed. There was nothing absurd or commercially unreasonable about the run-of-the-mill Delegation Clause contained in the Arbitration Agreement.

23

refusal to enforce the Delegation Clause runs afoul of Supreme Court precedent.

In *Henry Schein, Inc.*, the Supreme Court held that a delegation provision must be enforced, even when the court thinks that the argument in favor of arbitrability is "wholly groundless." 139 S. Ct. at 530. The Court reasoned: "When the parties' contract assigns a matter to arbitration, a court may not resolve the merits of the dispute even if the court thinks that a party's claim on the merits is frivolous. So, too, with arbitrability." *Id.* (internal citation omitted). The Supreme Court did not mince words: "A court has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Id.* at 529 (quotation marks omitted). Thus, regardless of the district court's perception of the strength or weakness of Uber's arbitrability argument, the court was required to respect the parties' Delegation Clause and compel arbitration.

### D. *Gingras* Does Not Support The District Court's Approach.

In refusing to enforce the Delegation Clause, the district court cited *Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2d Cir. 2019). *See* A-261 (Op. at 25 nn.95–96). But *Gingras* does not support the district court's decision. In that case, this Court declined to enforce a delegation provision because there was no possible way the plaintiff could get a fair arbitral hearing *on the question of arbitrability*. This case raises no such fairness concerns.

24

*Gingras* addressed "tribe-payday lending partnership[s]" that are structured as "transparent attempts … to skirt state and federal consumer protection law." 922 F.3d at 126. "Part of this scheme involves crafting arbitration agreements … in which borrowers are forced to disclaim the application of federal and state law in favor of tribal law (that may or may not be exceedingly favorable to the tribal lending entity)." *Id.* at 126–27.

In *Gingras*, the plaintiffs sued the tribal payday lenders, alleging violations of federal and state consumer protection laws. The payday lenders moved to compel arbitration, under an agreement which contained a delegation provision. In response, the plaintiffs argued that the arbitration agreement was invalid. They also included a 17-page section of their brief specifically addressing why the delegation provision, in particular, was invalid. *See* Brief for Plaintiffs-Appellees at 79–96, *Gingras v. Think Finance, Inc.*, No. 16-2019-cv(L) (2d Cir. Dec. 30, 2016), ECF No. 164, 2016 WL 7537794.

This Court refused to enforce the delegation provision at issue, finding the plaintiffs had mounted a successful "specific attack on the delegation provision." *Gingras*, 922 F.3d at 126. Two features of the delegation provision in *Gingras* rendered it fundamentally unfair.

*First*, the plaintiffs were stripped of the ability to make *any* state- and federal-law arguments against arbitrability because the arbitration agreements "require[d]

25

the application of tribal law only and disclaim[ed] the application of state and federal law." *Id.* at 127. In other words, if the *Gingras* plaintiffs attempted to argue before the arbitrator that the arbitration agreements were unconscionable or illegal under federal or state law, the plaintiffs would almost certainly lose because the arbitrator was forbidden to apply federal or state law and was compelled to apply only tribal law, which heavily tilted in favor of the tribal payday lenders. As the Fourth Circuit subsequently elaborated in a nearly identical case involving a tribal payday lender, "the choice-of-law clauses of the arbitration provision operate as a prospective waiver twice over, waiving not only a borrower's right to pursue federal statutory remedies … but also the very federal and state defenses to arbitrability that preserve that right." *Hengle v. Treppa*, 19 F.4th 324, 339 (4th Cir. 2021). "A delegation clause that requires an arbitrator to determine whether a valid and enforceable arbitration agreement exists without access to the substantive federal law necessary to make that determination results in the sort of farce we have previously refused to enforce under the FAA." *Id.* (quotation marks omitted).

*Second*, in *Gingras*, the plaintiffs could not get a fair arbitral hearing on the issue of arbitrability because "the arbitral forum for which [the parties' arbitration agreements] provide is illusory." *Gingras*, 922 F.3d at 127. The agreements at issue provided that a tribal court was "empowered to set aside the arbitrator's award if it does not comply with tribal law." *Id.* at 118. "Rather than the sharply limited federal

court review of the arbitrators' decisions as constrained by the FAA, the review by tribal courts under these agreements hands those courts unfettered discretion to overturn an arbitrator's award." *Id.* at 127–28. Combined with the requirement that tribal law apply—which was "alleged to be completely one-sided in favor of the tribe"—the tribe was "effectively insulate[d] … from any adverse award," and prospective litigants were left "without a fair chance of prevailing in arbitration." *Id.* at 128. And, this Court continued, "adding to the unconscionability of arbitrating under these terms are the allegations of corruption in tribal government." *Id.* "Not only have several tribal officers pleaded guilty to federal corruption crimes, but an FBI and Interior Department investigation uncovered tribal judges who felt intimidated enough to rule for the Tribe when they otherwise may not have." *Id.*

The tribal law choice-of-law provision and the tribal court's ability to disregard any arbitrator's ruling rendered the arbitration agreements at issue in *Gingras* fundamentally unfair *as to the arbitrability dispute*. Put simply, in *Gingras*, the delegation provision *itself* mandated a meaningless process. It stripped litigants of any assurance that the arguments they made in arbitration about arbitrability would be fairly decided. Any decision adverse to the tribal payday lender made by an arbitrator on the issue of arbitrability could be overruled by a corrupt tribal court based on a body of law slanted entirely in favor of the tribal lender. It thus makes perfect sense that the *Gingras* Court declined to enforce the delegation provision.

27

This case is nothing like *Gingras*. As discussed, the plaintiffs in *Gingras* mounted a specific and substantive challenge to the delegation provision, and the court decided that challenge in their favor. *See supra* at 25. Here, by contrast, Plaintiffs-Appellees only mentioned the Delegation Clause in a cursory footnote in reference to an argument aimed broadly at the Terms of Use—an argument that the district court decided *against* Plaintiffs-Appellees. *See supra* at 17–20. In addition, and unlike the tribal pay-day lending agreements in *Gingras*, Uber's Arbitration Agreement does not strip Plaintiffs-Appellees of the ability to make any arguments based on federal or state law. To the contrary, Plaintiffs-Appellees are free to make the exact same arbitrability arguments to the arbitrator that they made to the district court below. Moreover, unlike in *Gingras*, the arbitrator's decision in this case will not be subject to review by a corrupt tribal court with unlimited veto power. The Arbitration Agreement "require[s] [the parties] to meet and confer to select a neutral arbitration provider," and the arbitrator's decision will be subject to review under the FAA. *See* A-198–99 (Sullivan Decl. Ex. F at 60–61). Courts have repeatedly enforced Uber's Delegation Clause. *See, e.g.*, *Singh v. Uber Techs., Inc.*, No. 21-3234, -- F.4th --, 2023 WL 3086603, at *9 (3d Cir. Apr. 26, 2023); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016); *Spates v. Uber Techs., Inc.*, No. 21-CV-10155, 2023 WL 3506138, at *3 (S.D.N.Y. Mar. 31, 2023).

In sum, if this Court enforces the parties' Delegation Clause, Plaintiffs-Appellees can make the very same arbitrability arguments to the arbitrator that they would make in court; and they will get a fair hearing on arbitrability issues before the mutually agreed-upon arbitrator. *Gingras* therefore supplies no basis to deny enforcement of the parties' Delegation Clause.

## II. The District Court Erred In Finding That The Parties' Dispute Was Not Arbitrable.

This Court should not decide whether Plaintiffs-Appellees' claims are arbitrable. It should send that question to the arbitrator. But if the Court were to reach that question, it should hold that Plaintiffs-Appellees' claims are arbitrable. The district court erred in holding otherwise.

The district court stated that Uber's Arbitration Agreement, "if enforced according to [its] terms," "would require arbitration of *any* claims between defendants and … [p]laintiffs, including claims without any nexus to the agreements containing the clauses—*i.e.*, defendants' terms of use." A-262 (Op. at 26). The court held that "as a matter of either contract formation or unconscionability," the Arbitration Agreement "do[es] not apply to Plaintiffs' claims to the extent they lack any nexus to the underlying contract[]." A-265 (*Id.* at 29). It further held that "Plaintiffs' claims are completely unrelated to their use of [Uber's] platforms," and were therefore not arbitrable. A-263 (*Id.* at 27).

29

Contrary to the district court's view, however, the Arbitration Agreement does not require arbitration of "*any* claims." Instead, by its terms, the Agreement applies to an enumerated list of "Covered Disputes," subject to several exceptions. A-244 (*Id.* at 8). As relevant here, the Arbitration Agreement applies to disputes "arising out of or relating to" "(i) these Terms," as well as "(iv) your relationship with Uber." A-194–95 (Sullivan Decl. Ex. F at 56–57); *see supra* at 5. The Arbitration Agreement carves out several exceptions, such as claims brought in small claims court, sexual assault and sexual harassment claims, and intellectual property claims. *See* A-198 (Sullivan Decl. Ex. F at 60); *supra* at 5–6. That is not an "infinite" arbitration clause.

The district court further erred in holding that the Arbitration Agreement, if construed according to its terms, is "absurd" or "unconscionable." A-263–64 (Op. at 27–28). This Court has repeatedly held that an arbitration agreement covering all claims "arising out of or relating to" an underlying contract is enforceable. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649, 654 (2d Cir. 2004) (enforcing arbitration agreement covering "any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement" (quotation marks omitted)); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) (similar). Likewise, courts have routinely enforced arbitration agreements with "relationship" language similar to Uber's. *See, e.g.*,

30

*Jampol v. Blink Holdings, Inc.,* No. 20 CIV. 2760, 2020 WL 7774400, at \*5–6 (S.D.N.Y. Dec. 30, 2020) (enforcing provision that "requires arbitration of all disputes that touch on the parties' relationship" and refusing to "accept Plaintiff's invitation to re-write the parties' agreement"); *Goss v. Smiley*, No. 18 C 7407, 2019 WL 4958215, at \*3 (N.D. Ill. Oct. 8, 2019) (enforcing arbitration provision covering all claims relating to "your relationship with us"). The district court identified no case law finding such "relationship" language to be absurd or unconscionable.

All the cases relied upon by the district court regarding arbitrability are inapposite because they dealt with arbitration agreements fundamentally unlike the one at issue here. *See* A-262–63 (Op. at 26–27 & nn.99–104). In *McFarlane v. Altice USA, Inc.*, the arbitration clause was "*significantly* broader … than the paradigmatic broad arbitration clause identified by the Second Circuit," because it covered "'[a]ny and all disputes' . . . without meaningful exception and for all eternity." 524 F. Supp. 3d 264, 275 (S.D.N.Y. 2021) (emphasis in original) (citation omitted). The loan agreement in *Smith v. Steinkamp* similarly required arbitration of all "Disputes," defined "without limitation," and including "all claims asserted by" either party without regard to the terms or loan services provided. 318 F.3d 775, 776 (7th Cir. 2003) (quotation marks omitted). Similarly, the arbitration agreements at issue in both *Revitch v. DIRECTV, LLC* and *Wexler v. AT&T Corp.* covered "all disputes and claims between" the parties, and used the expansive "includ[ing], but … not limited

to" language when describing just some of the claims covered thereunder. *Revitch*, 977 F.3d 713, 715 (9th Cir. 2020); *Wexler*, 211 F. Supp. 3d 500, 501 (E.D.N.Y. 2016). And the arbitration agreement in *In re Jiffy Lube International, Inc., Text Spam Litigation* applied to "any and all disputes" that included "warranty, contract, tort[,] or any other claim" and "[was] *not* limited to disputes arising from or related to the transaction or contract at issue." 847 F. Supp. 2d 1253, 1262 (S.D. Cal. 2012) (emphasis added).[6]

In any event, under *either* this Arbitration Agreement's plain language *or* the district court's gloss on that language, Plaintiffs-Appellees' complaint is arbitrable. Plaintiffs-Appellees' complaint relates to the Terms of Use as well as their relationship with Uber, and it is hence arbitrable under the Arbitration Agreement's plain text. Likewise, Plaintiffs-Appellees' complaint has a "nexus to the underlying contract," A-265 (Op. at 29), and is hence arbitrable under the district court's approach.

---

[6] In *Hearn v. Comcast Cable Communications, LLC*, the Eleventh Circuit reversed the denial of a motion to compel arbitration, finding the district court had "misinterpreted" the relevant agreement and that the claims fell within the scope of the arbitration provision. 992 F.3d 1209, 1214–15 (11th Cir. 2021). Regardless, and unlike Uber's Arbitration Agreement, the arbitration agreement in *Hearn* "lack[ed] language limiting the scope of arbitrable claims to those 'arising out of' or 'relating to' the [relevant] Agreement." 415 F. Supp. 3d 1155, 1162 (N.D. Ga. 2019).

This Court has made clear that broad arbitration agreements like Uber's must be construed generously. "[T]he existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Paramedics*, 369 F.3d at 653 (quotation marks omitted). Any "[d]oubts should be resolved in favor of coverage." *Id.* (quotation marks omitted).

Applying that presumption of arbitrability, Plaintiffs-Appellees' claims are arbitrable. They relate to, and have a nexus with, the Terms of Use, as well as the parties' relationship. Plaintiffs-Appellees' amended complaint alleges that Uber and Postmates are "two-sided platforms" that, among other things, act as intermediaries to connect restaurants and consumers "to the benefit of both." A-27 (Am. Compl. ¶ 36). As Plaintiffs-Appellees acknowledge, therefore, Uber's contracts with *restaurants*—which Plaintiffs-Appellees contend contain unfairly anticompetitive terms—are inextricably intertwined with Uber's contracts with *users*—*i.e.*, the Terms of Use. Plaintiffs-Appellees claim they are merely seeking damages with respect to meals they purchase off-platform. But, as a practical matter, Plaintiffs-Appellees seek to rewrite Uber's contracts with restaurants. And, on a two-sided platform, any effort to rewrite contracts with restaurants will inevitably affect the consumers that purchase from those restaurants.

33

Indeed, Plaintiffs-Appellees' complaint makes clear that their goal is to change the price of meals that Uber users—including them—pay for meals purchased using Uber's platform. A-59 (*Id.* ¶ 147) (stating that Plaintiffs-Appellees challenge policies that allegedly "force restaurants to increase the prices of items listed on Defendants' platforms"). Plaintiffs-Appellees allege that Uber's contracts with restaurants, which supposedly prevent restaurants from offering different pricing for meals sold through non-platform channels, have "produced substantial anticompetitive effects in the Restaurant Platform Market." A-70 (*Id.* ¶ 201). In other words, Plaintiffs-Appellees' theory is that consumers pay too much for meals. Plaintiffs-Appellees seek "an injunction to enjoin Defendants from continuing" to use these contractual terms. A-74 (*Id.* at 55, Prayer for Relief (d)). Thus, Plaintiffs-Appellees seek an injunction that, they claim, would reduce the price of the meals they purchase on Uber's platform.

Uber's Terms of Use govern Plaintiffs-Appellees' use of Uber's platform. There is thus a clear nexus between a contract *governing Plaintiffs-Appellees' use of Uber's platform* and a lawsuit seeking an injunction *altering the cost and availability of meals purchased using that platform*. Likewise, Plaintiffs-Appellees' lawsuit relates to their relationship with Uber—which includes buying meals using Uber's platform.

34

Moreover, Plaintiffs-Appellees' antitrust theory is premised on the notion that Uber's critical mass of users—and the "stickiness" of Uber's platform for these users—confers on Uber market power that allows it to retain customers without improving its prices or services. That dynamic, in turn, Plaintiffs-Appellees say, operates to prevent restaurants from effectively offering lower prices on non-platform channels; restaurants would simply lose out on Uber's significant customer base. A-21 (*Id.* ¶¶ 3–5). Again, Plaintiffs-Appellees' use of and relationship with Uber is a constituent part of their theory of harm—their use of and relationship with Uber supplies Uber with the alleged market power that supposedly produces the anticompetitive effect. Put another way, Plaintiffs-Appellees signed up for Uber—and agreed to its Terms of Use—to avail themselves of the benefits of its platform: access to restaurant meals and delivery, readily available via a single, easy-to-use, and expansive network. Plaintiffs-Appellees are suing because they are unhappy about an alleged negative consequence of that same platform they registered for.

At a minimum, the Arbitration Agreement is at least "susceptible of an interpretation that covers the asserted dispute." *Paramedics*, 369 F.3d at 654. As such, the parties' dispute is arbitrable.

## CONCLUSION

This Court should reverse the district court's order and remand with instructions to compel arbitration of the parties' arbitrability dispute.

Dated:  May 26, 2023                   Respectfully Submitted,

                                        /s/ Adam G. Unikowsky
                                       Adam G. Unikowsky
                                       Elizabeth B. Deutsch
                                       JENNER & BLOCK LLP
                                       1099 New York Ave. NW, Suite 900
                                       Washington, DC 20001
                                       (202) 639-6000


*Counsel for Defendants-Appellants Uber Technologies, Inc., and Postmates, LLC*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the Court's order because it contains 8,146 words, excluding the exempted parts of the brief. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013, Times New Roman 14-point.

Dated:  May 26, 2023          By:  /s/ Adam G. Unikowsky
                                                   Adam G. Unikowsky

37

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 26, 2023                    By: _/s/ Adam G. Unikowsky_
                                       Adam G. Unikowsky