# 23-521(L)

## 23-522 (CON)

## United States Court of Appeals
## for the Second Circuit

MARIAM DAVITASHVILI, *individually and on behalf of all others similarly situated*,
ADAM BENSIMON, *individually and on behalf of all others similarly situated*,
*Plaintiffs-Appellees*,

PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, AND NATHAN OBEY
*Consolidated Plaintiffs-Appellees*,

MIA SAPIENZA, AND MALIK DREWEY,
*Plaintiffs*,

– v. –

GRUBHUB INC., DBA SEAMLESS, POSTMATES INC., AND UBER TECHNOLOGIES, INC.,
*in its own right and as parent of wholly owned subsidiary* UBER EATS,
*Defendants-Appellants*,

*DoorDash Inc.*,
*Defendant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### REPLY BRIEF OF DEFENDANTS-APPELLANTS
### UBER TECHNOLOGIES, INC. AND POSTMATES, LLC

Adam G. Unikowsky
Elizabeth B. Deutsch
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000

*Attorneys for Defendants-Appellants Uber Technologies, Inc. and Postmates, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ...............................................................................1

I.    The District Court Should Have Enforced the Delegation Clause
      Because Plaintiffs-Appellees Did Not Specifically Challenge It....................2

      A.    Under Rent-A-Center, Delegation Clauses Must Be Enforced
            Unless Specifically Challenged..............................................2

      B.    Plaintiffs-Appellees' Cursory Postmates-Only Footnote Is Not
            a Specific Challenge to the Delegation Clause. ...................................3

      C.    The District Court Did Not Even Accept Plaintiffs-Appellees'
            Footnoted Argument. .............................................................7

II.   Plaintiffs-Appellees' Alternative Theories for Avoiding the
      Delegation Clause Lack Merit. ..........................................................9

      A.    The Delegation Clause is Enforceable Under FAA Section 2..............9

      B.    The Class Action Waiver Is Not a Way Around the Delegation
            Clause. ...................................................................12

III.  If the Court Decides the Arbitrability Question, It Should Hold that
      the Dispute is Arbitrable..............................................................19

CONCLUSION .................................................................................23

# TABLE OF AUTHORITIES

CASES

*Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2d Cir. 2019) ..................................4

*Haider v. Lyft, Inc.*, No. 20-cv-2997, 2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021) ..................................................................................................................6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019)..............11

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) .....................16

*O'Conner v. Agilant Solutions, Inc.*, 444 F. Supp. 3d 593 (S.D.N.Y. 2020) ...........7

*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013).......................................15

*Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645 (2d Cir. 2004)...............12, 19, 20

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)..........................1, 2, 5, 10

*Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891 (N.D. Cal. 2020)...............7

*Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003)...................................................12

STATUTES

9 U.S.C. § 2 .............................................................................................................10

**INTRODUCTION**

Uber's[1] Terms of Use contain an Arbitration Agreement with a Delegation Clause—that is, "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). In *Rent-A-Center*, the Supreme Court held that a Delegation Clause must be enforced unless the plaintiff "specifically" challenges it. *Id.* at 73-74.

In the proceedings below, Uber moved to compel arbitration, and Plaintiffs-Appellees alleged their claims were not arbitrable. This arbitrability dispute falls within the heartland of the Delegation Clause. Under *Rent-A-Center*, the District Court should have enforced the Delegation Clause unless Plaintiffs-Appellees "specifically" challenged it.

Plaintiffs-Appellees did not. Their opposition to Uber's motion to compel arbitration included only a single cursory footnote regarding the Delegation Clause, and even that cursory footnote pertained only to Postmates. Yet, citing that footnote, the District Court held that Plaintiffs-Appellees had sufficiently challenged the Delegation Clause as to *both* Uber entities. And, without even adjudicating the argument in the footnote, the District Court skipped to the merits of the arbitrability

---

[1] Because the Terms of Use cover both Uber and Postmates, the term "Uber" will refer to both the Uber and Postmates entities, except where noted.

1

dispute and invalidated the Arbitration Agreement. That ruling is irreconcilable with *Rent-A-Center*.

## I. The District Court Should Have Enforced the Delegation Clause Because Plaintiffs-Appellees Did Not Specifically Challenge It.

This appeal begins and ends with *Rent-A-Center*'s rule that a Delegation Clause must be enforced unless specifically challenged.

### A. Under *Rent-A-Center*, Delegation Clauses Must Be Enforced Unless Specifically Challenged.

*Rent-A-Center* establishes that unless a plaintiff "specifically" challenges a Delegation Clause, a federal court "must treat it as valid" and "enforce it." 561 U.S. at 72. A party's challenge to "another provision" of the Arbitration Agreement, or the Arbitration Agreement "as a whole," is no basis to deny enforcement of a Delegation Clause. *Id.* at 70.

Section 2(a)(1) of Uber's Terms of Use provides, as relevant here, that "you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms" or "(iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law." A-194-95 (Sullivan Decl. Ex. F at 56-57). Section 2(a)(4) of Uber's Terms of Use, entitled "Delegation Clause," grants the arbitrator "exclusive authority" to resolve "any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without

2

limitation any claim that all or any part of this Arbitration Agreement is void or voidable." A-197 (*Id.* Ex. F at 59).

The parties dispute whether Section 2(a)(1) of Uber's Terms of Use require Plaintiffs-Appellees' claims to be arbitrated. By its terms, the Delegation Clause requires that dispute itself to be arbitrated. That is the only conclusion that would be consistent with *Rent-A-Center*.

B. Plaintiffs-Appellees' Cursory Postmates-Only Footnote Is Not a Specific Challenge to the Delegation Clause.

Plaintiffs-Appellees did not specifically challenge the Delegation Clause. In their opposition to Uber's motion to compel arbitration, Plaintiffs-Appellees argued that the Arbitration Agreement as to Postmates was unconscionable because it was "imposed" on Plaintiffs-Appellees "during the pendency of this litigation, without providing any notice to Plaintiffs' counsel." A-220 (Pls.' Opp. to Mot. to Compel Arbitration at 33, Dkt. 87 ("Pls.' Opp.")). Plaintiffs-Appellees included the following footnote: "For the avoidance of doubt, the Platform Plaintiffs challenge the validity of the Delegation Clause itself, on the grounds that it would be unconscionable to permit Postmates to enforce that clause." A-221 (*Id.* at 34 n.9) (internal citation omitted).

This falls far short of the type of specific challenge sufficient to satisfy *Rent-A-Center*. Uber Br. 16-17. First, Plaintiffs-Appellees concede that their unconscionability argument applied only to Postmates. *See* Pl. Br. 31 n.3. The

3

District Court therefore had no basis for invalidating the Delegation Clause as to *both* Uber entities.

Even as to Postmates, Plaintiffs-Appellees are unable to rehabilitate the District Court's decision. Plaintiffs-Appellees claim that under *Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2d Cir. 2019), they are permitted to rely on the same arguments for purposes of challenging the Delegation Clause and the Arbitration Agreement as a whole. Pl. Br. 32-33. They claim that their unconscionability theory—that "Uber imposed the purported obligation to arbitrate with Postmates in the midst of this litigation"—applies "with equal force" to the Delegation Clause. *Id.* at 33.

That argument misunderstands *Gingras*. It is true that, under *Gingras* and other cases cited by Plaintiffs-Appellees (Pl. Br. 33), a plaintiff can make a specific, as-applied challenge to a delegation clause, and then rely on overlapping facts to make an as-applied challenge to an arbitration agreement as a whole. Indeed, *Gingras* involves that exact fact pattern. In *Gingras*, the arbitration agreement banned the plaintiffs from making *any* state- and federal-law arguments about *anything* and subjected the plaintiffs to a corrupt, biased arbitrator. 922 F.3d at 126-27. As the *Gingras* plaintiffs explained in a 17-page section of their brief, *see* Uber Br. 25, those features of the arbitration agreement made the delegation clause unconscionable. The plaintiffs could not make any federal-law or state-law

4

arguments *against arbitrability*, thus stripping the plaintiffs of a fair hearing *in the arbitrability dispute*. *See* Uber Br. 26-28. And, the arbitrator *in the arbitrability dispute* would be corrupt. *Id.* Having demonstrated that the delegation clause was unconscionable, the *Gingras* plaintiffs then explained how those aspects of the arbitration agreement independently established that the arbitration agreement as a whole was unconscionable. Specifically, they argued that they could make no federal-law or state-law arguments *on the merits* and the arbitrator *in the merits dispute* would be corrupt. *Id.*

Here, Plaintiffs-Appellees have presented no argument targeting the Delegation Clause that remotely resembles the *Gingras* plaintiffs' argument. Plaintiffs-Appellees argue that the Arbitration Agreement as a whole is unconscionable as to Postmates because it was imposed mid-litigation. But if the Delegation Clause is enforced, Plaintiffs-Appellees will still have the opportunity to make that argument to the arbitrator. Plaintiffs-Appellees cannot invalidate the Delegation Clause unless they show that it would be unconscionable for an arbitrator to decide *that unconscionability dispute*. They make no arguments on this issue, either in their cursory footnote below or on appeal. Plaintiffs-Appellees simply assert that, because the entire Arbitration Agreement is allegedly unconscionable as to Postmates, the Delegation Clause must be unconscionable too. That is the exact approach that *Rent-A-Center* repudiates. 561 U.S. at 72-73.

To be clear, contrary to Plaintiffs-Appellees' suggestion, Pl. Br. 35, Uber strongly disputes Plaintiffs-Appellees' unconscionability argument as applied to *any* portion of the Arbitration Agreement. Uber acquired Postmates during this litigation. Uber then advised all Postmates users that if they wanted to keep using the Postmates app, they had to abide by the Terms of Use of Postmates' new owner, Uber. As then-District Judge Nathan explained in *Haider v. Lyft, Inc.*, No. 20-cv-2997, 2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021), that standard business practice is not unconscionable. There is "no authority for the proposition that an amendment to a company's terms of service may constitute a prohibited communication with a represented party." *Id.* at *3. Crucially, Plaintiffs-Appellees make no allegation that Uber "introduced arbitration agreements specifically targeted at the pending litigation." *Id.* at *2. Nor do Plaintiffs-Appellees contend that Uber's counsel "communicate[d] with [plaintiffs] about the subject of the litigation by drafting revisions to [the company's] arbitration agreement." *Id.* at *3. Instead, Uber sent the new Terms of Use to *all* Postmates users for a reason completely unrelated to the litigation.

As Judge Nathan explained, Plaintiffs-Appellees' proposed unconscionability rule would be "unworkable in practice." *Id.* "A large corporation … may face a number of lawsuits at any given time, and prohibiting routine amendments to their terms of service would essentially freeze their contracts in place." *Id.* Uber's

business need to promulgate new Terms of Use was particularly obvious here, where Uber acquired Postmates after this lawsuit was filed and therefore had no choice but to circulate new Uber-specific Terms of Use to all Postmates users.  Neither of Plaintiffs-Appellees' cases (Pl. Br. 34) say anything to the contrary: in *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 904 (N.D. Cal. 2020), the court found an arbitration agreement lacking a delegation clause unconscionable because it was too broad, while in *O'Conner v. Agilant Solutions, Inc.*, 444 F. Supp. 3d 593, 601-03 (S.D.N.Y. 2020), the employer misled its employees and coerced them to sign an arbitration agreement for the specific purpose of mooting their Fair Labor Standards Act claim.

The more important point, however, is that this issue is for the arbitrator.  If Plaintiffs-Appellees wish to argue that their Arbitration Agreement with Postmates is unconscionable because they entered into it after this litigation commenced, Plaintiffs-Appellees are free to do so.  Under the Delegation Clause, however, Plaintiffs-Appellees must make that argument to the arbitrator, not the Court.

C. The District Court Did Not Even Accept Plaintiffs-Appellees' Footnoted Argument.

Not only was Plaintiffs-Appellees' footnoted challenge to the Delegation Clause woefully inadequate, but the District Court did not even *agree* with it.  It simply asserted that Plaintiffs-Appellees made the argument in the footnote, and without any further discussion, proceeded to Plaintiffs-Appellees' argument that the

7

Arbitration Agreement was unconscionable for the unrelated reason that it had a purportedly "infinite" scope covering even claims that had no nexus to the Terms of Use. A-261-62 (Op. at 25-26).

Plaintiffs-Appellees insist that the District Court actually *did* agree with the argument in the footnote. *See* Pl. Br. 32 ("Plaintiffs-Appellees can surely defend on appeal the district court's decision accepting that argument"); *id.* at 35 (asserting that "Uber does not engage with this argument, which the district court accepted"). Plaintiffs-Appellees misinterpret the District Court's decision. The District Court did not write a word about Plaintiffs-Appellees' Postmates-specific unconscionability argument anywhere in its opinion (beyond its bare citation to the footnote). To the contrary, the District Court held that there was *insufficient* evidence of an arbitration agreement with Postmates in 2019, but *sufficient* evidence of an arbitration agreement with Postmates in 2021—the very agreement that Plaintiffs-Appellees claim to have been unconscionable because it was imposed mid-litigation.[2] Moreover, as Plaintiffs-Appellees admit, the relief ordered by the District Court—striking the Delegation Clause as to both Uber and Postmates—is

---

[2] Plaintiffs-Appellees insist that this portion of the district court's opinion addressed contract formation, rather than unconscionability. Pl. Br. 34. But the issues are intertwined. It is implausible to suggest that the District Court *expressly* held that the 2021 agreement with Postmates was formed, while *silently* concluding—without any explanation—that the 2021 agreement with Postmates was unconscionable based on the circumstances surrounding its formation.

8

inconsistent with the argument in the footnote—which would, at most, have supported striking the Delegation Clause as to Postmates only. Pl. Br. 31 n.3. There is simply no way to read the District Court's opinion as endorsing the unconscionability argument in Plaintiffs-Appellees' footnote. In any event, even if the District Court did endorse it, it would be wrong for the reasons stated above.

## II. Plaintiffs-Appellees' Alternative Theories for Avoiding the Delegation Clause Lack Merit.

The fairest reading of the District Court's opinion is that it struck the Delegation Clause as to both Uber entities based on Plaintiffs-Appellees' unconscionability argument that applied to both Uber entities—*i.e.*, Plaintiffs-Appellees' argument regarding "infinite" arbitration clauses. After all, that was the sole unconscionability argument that the District Court mentioned in its opinion.

Uber's opening brief explained why striking the Delegation Clause on this basis was wrong. Uber Br. 21-29. Plaintiffs-Appellees have no answer on this issue.

Instead, in their effort to elide the Delegation Clause, Plaintiffs-Appellees raise two alternative theories that the District Court did not address: one related to Section 2 of the Federal Arbitration Act (FAA), *see* Pl. Br. 16-21, and the other related to the Class Action Waiver, *see* Pl. Br. 35-42. These arguments fail.

A. The Delegation Clause is Enforceable Under FAA Section 2.

Section 2 of the FAA provides: "A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy

9

thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. According to Plaintiffs-Appellees, the FAA applies only to controversies "arising out of" an arbitration agreement, which, they claim, requires "some 'causal relationship' between the agreement and the dispute." Pl. Br. 17-18. They contend that this dispute "does not 'arise out of' Defendants' Terms or Plaintiffs-Appellees' use of Defendants' platforms," and that the FAA therefore does not require enforcement of the arbitration agreement. *Id.* at 19.

But Plaintiffs-Appellees overlook that Uber is attempting to enforce the Delegation Clause for purposes of resolving the *arbitrability* controversy. As the Supreme Court explained in *Rent-A-Center*, "[a]n agreement to arbitrate a gateway issue," *i.e.*, a delegation provision, "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." 561 U.S. at 70. Thus, under *Rent-A-Center*, the question is: does the FAA require enforcement of this "additional arbitration agreement"? *Id.*

The answer is yes. The "controversy" that Uber seeks to arbitrate, via the Delegation Clause, is the arbitrability controversy. So under Section 2 of the FAA, the question is: does the arbitrability controversy arise out of the Terms of Use?

Of course it does. The parties dispute whether the Arbitration Agreement, located within the Terms of Use, is enforceable. The arbitrability controversy could

not possibly exist without the Terms of Use. Therefore, Section 2 of the FAA requires arbitration of the arbitrability controversy.

Plaintiffs-Appellees claim that Section 2 does not apply because they "could have brought the same claims, and would have suffered damages, even if they had never used Defendants' platforms." Pl. Br. 19. Uber disputes that their claims would have been "the same" if they never used its platform. *See infra* at 22-23. But even assuming this assertion is correct, it is irrelevant. Uber seeks to enforce the agreement to arbitrate *arbitrability*. Plaintiffs-Appellees could not have disputed *arbitrability* with Uber "if they had never used Defendants' platforms."

Any other holding would conflict with *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019). In *Henry Schein*, the Supreme Court held that a delegation provision must be enforced, even when the court thinks that the argument in favor of arbitrability is "wholly groundless." *Id.* at 530. It reasoned: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Id.* at 529. "A court has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Id.* (internal quotation marks omitted). Yet, Plaintiffs-Appellees argue that the Court should weigh whether there is a sufficiently close connection between the Arbitration Agreement and the parties'

11

dispute *before* enforcing the Delegation Clause—an approach that *Henry Schein* categorically rejects.[3]

B. <u>The Class Action Waiver Is Not a Way Around the Delegation Clause.</u>

Uber's Arbitration Agreement includes a Class Action Waiver which requires individualized arbitration. A-195 (Sullivan Decl. Ex. F at 57). The Class Action Waiver also includes a residual provision providing that the "parties further agree that if for any reason a claim does not proceed in arbitration, this Class Action Waiver shall remain in effect, and a court may not preside over any action joining, coordinating, or consolidating the claims of multiple individuals against Uber in a single proceeding." A-195 (*Id.*).

The District Court concluded that the Arbitration Agreement was unconscionable because it was purportedly "infinite." Having held that the case must proceed in court, it then held that the Class Action Waiver was unenforceable in court on the same ground: it was purportedly "infinite." A-265-66 (Op. at 29-30).

---

[3] Uber disagrees with Plaintiffs-Appellees' insistence that the FAA requires enforcement of arbitration agreements only when the parties' contract is the "source" of the dispute. Pl. Br. 19-20. That approach conflicts with this Court's precedent enforcing arbitration agreements covering all claims "arising out of or relating to" an underlying contract. *See, e.g.*, *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649, 654 (2d Cir. 2004); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003). Moreover, even assuming Plaintiffs-Appellees are correct that the FAA requires a claim to have a causal relationship with an arbitration agreement, that requirement is satisfied here. As explained below, Plaintiffs-Appellees' claim is inextricably intertwined with the Terms of Use, and their damages will be affected by their use of Uber's platform. *Infra* at 20-23.

12

Plaintiffs-Appellees attempt to transform that holding into something dramatically different. According to Plaintiffs-Appellees, *even if* the Delegation Clause is enforceable, the Class Action Waiver supplies an *independent* basis for the Court to invalidate the Arbitration Agreement. Pl. Br. 35-42. That argument fails.

Section 2(a)(1) of the Arbitration Agreement, entitled "Covered Disputes," and Section 2(a)(2) of the Arbitration Agreement, entitled "Class Action Waiver," fit together in a straightforward way. Section 2(a)(1) defines the class of disputes subject to arbitration:

> **(1) <u>Covered Disputes</u>**: Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; (iii) incidents or accidents resulting in personal injury to you or anyone else that you allege occurred in connection with your use of the Services (including, but not limited to, your use of the Uber Marketplace Platform or the driver version of the Uber App), regardless whether the dispute, claim, or controversy occurred or accrued before or after the date you agreed to the Terms, and regardless whether you allege that the personal injury was experienced by you or anyone else; and (iv) your relationship with Uber, will be settled by binding individual arbitration between you and Uber, and not in a court of law. This Arbitration Agreement survives after your relationship with Uber ends.

A-194-95 (Sullivan Decl. Ex. F at 56-57).

13

Meanwhile, Section 2(a)(2)'s first paragraph provides that, if a dispute is arbitrated, the parties will conduct an "individual arbitration" rather than a class action:

> **(2) Class Action Waiver**: You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, consolidated, and/or representative action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, coordinated, consolidated, and/or representative action, or to award relief to anyone but the individual in arbitration. The parties also expressly waive the right to seek, recover, or obtain any non-individual relief.

A-195 (*id.* at 57).

Section 2(a)(4) of the Arbitration Agreement includes the Delegation Clause. The Delegation Clause assigns arbitrability disputes to the arbitrator, but includes a proviso stating that a court, not an arbitrator, "shall have the exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver ..., including, but not limited to, any claim that all or part of the Class Action Waiver … is unenforceable, unconscionable, illegal, void, or voidable." A-197-98 (*id.* at 59-60). This proviso avoids the scenario in which the arbitrator concludes that the Arbitration Agreement is valid but the Class Action Waiver is invalid, thus forcing

14

the parties into class arbitration. *See, e.g.*, *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013) (upholding arbitrator's decision requiring class arbitration).

Here, Plaintiffs-Appellees challenge the Covered Disputes provision, not the Class Action Waiver. They argue that their claim should not be arbitrated because the Arbitration Agreement's coverage is too broad. They do not suggest that *if* their claim is arbitrable, *then* it would be unconscionable for the arbitration to proceed on an individualized basis as opposed to a class action. Because the Delegation Clause requires disputes over arbitrability under the Covered Disputes provision to be resolved by the arbitrator, the parties' arbitrability dispute in this case must be resolved by the arbitrator.

Plaintiffs-Appellees offer an alternative, creative interpretation of the Arbitration Agreement. They argue that the first sentence of the Class Action Waiver—"You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration"—is an *entirely separate* arbitration agreement from the arbitration agreement in Section 2(a)(1). Moreover, according to Plaintiffs-Appellees, this agreement is *broader* than the arbitration agreement in Section 2(a)(1), because it purports to cover *all* disputes, rather than merely the "Covered Disputes" in Section 2(a)(1). Therefore, Plaintiffs-Appellees say, the Court has the authority to invalidate this separate, broader arbitration agreement because it is nested within the Class Action

15

Waiver. And because the Delegation Clause contains a proviso stating that disputes concerning the Class Action Waiver are to be resolved by the Court, Plaintiffs-Appellees claim that the Court may invalidate that separate, broader arbitration agreement. Pl. Br. 35-42.

Plaintiffs-Appellees' interpretation of the Class Action Waiver is implausible. In construing contracts, including arbitration agreements, it is a "cardinal principle" that "a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). Courts should "harmonize" the provisions of a contract rather than interpreting them in a manner that sets them up "in conflict with one another." *Id.* at 63-64. Plaintiffs-Appellees' position contradicts that hornbook rule. Under Plaintiffs-Appellees' proposed interpretation, Section 2(a)(2)'s first sentence obliterates Section 2(a)(1). Section 2(a)(1)'s careful recitation of "Covered Disputes" would be for naught, because Section 2(a)(2) would separately require arbitration of *all* disputes, irrespective of whether they are "Covered Disputes" under Section 2(a)(1). Moreover, Plaintiffs-Appellees' interpretation of Section 2(a)(2) would also obliterate the Delegation Clause, because any arbitrability dispute could be framed as a dispute over the scope of the separate arbitration agreement nested within the Class Action Waiver.

There is a far more natural interpretation that does not wipe out Sections

16

2(a)(1) and 2(a)(4). Section 2(a)(1) defines a set of Covered Disputes that must be arbitrated. Immediately thereafter, Section 2(a)(2)'s first sentence recites that "any and all disputes, claims, or controversies" must be resolved "only in individual arbitration." In context, the phrase "any and all disputes, claims, or controversies" refers to "any and all disputes, claims, or controversies" within the set of arbitrable disputes that the Arbitration Agreement *just finished identifying* in Section 2(a)(1). So, Section 2(a)(2)'s first sentence means that *if* a dispute will be arbitrated, *then* the arbitration will be an individual arbitration.

This interpretation aligns Section 2(a)(1)'s first sentence with Section 2(a)(1)'s introductory words—"Class Action Waiver." It also aligns Section 2(a)(2)'s first sentence with its second sentence, which states explicitly that an arbitrator will not hear a class action. And it ensures that Sections 2(a)(1), 2(a)(2), and 2(a)(4) work together harmoniously. Section 2(a)(1) defines which disputes are arbitrable. Section 2(a)(2) says arbitrable disputes—whatever they may be—must be resolved in individual, as opposed to collective, arbitration. Section 2(a)(4) says that disputes over arbitrability go to the arbitrator, while disputes over the requirement that disputes be resolved individually go to the court. For example, if a plaintiff argued it was unconscionable to require a plaintiff to arbitrate individually rather than as a class, that argument would be resolved by the court.

Under that common-sense interpretation of the Arbitration Agreement,

17

Plaintiffs-Appellees' argument fails. Plaintiffs-Appellees are disputing arbitrability, not the individualization requirement, so the Delegation Clause requires that the dispute go to the arbitrator.[4]

But even if Plaintiffs-Appellees' implausible interpretation of Section 2(a)(2) were correct, the Delegation Clause *still* must be enforced. This is because Uber is not trying to enforce the purportedly separate arbitration agreement in Section 2(a)(2)'s first sentence (indeed, Uber believes Section 2(a)(2)'s sole function is to serve as a Class Action Waiver). Rather, Uber is trying to enforce Section 2(a)(1). And there is no doubt that a dispute over Section 2(a)(1) *does* go to the arbitrator under the Delegation Clause.

Moreover, even if Plaintiffs-Appellees could succeed in showing that Section 2(a)(2)'s first sentence is a separate, unconscionable "infinite" arbitration clause, that would get them nowhere. At most, it would result in striking that single sentence from the Class Action Waiver, while leaving the rest of the Class Action Waiver intact, pursuant to the Arbitration Agreement's severability clause: "If there is a final

---

[4] Plaintiffs-Appellees state that if there is "any ambiguity regarding whether the court or an arbitrator should have resolved the parties' disputes regarding the enforceability and scope of the Class Action Waiver, that ambiguity is properly resolved against arbitration." Pl. Br. 41. But Uber is not claiming that the contract is ambiguous as to whether a court, rather than an arbitrator, resolves disputes over the enforceability and scope of the Class Action Waiver. To the contrary, the Arbitration Agreement unambiguously assigns such disputes to the court. However, that is irrelevant in this case, as there *is* no dispute over the enforceability and scope of the Class Action Waiver.

18

judicial determination that any portion of this Class Action Waiver is unenforceable or unlawful for any reason, … the unenforceable or unlawful portion(s) shall be severed from this Arbitration Agreement." A-195 (Sullivan Decl. Ex. F at 57). In particular, Section 2(a)(2)'s second sentence would remain intact, and that sentence expressly provides that the parties waive their right to bring class actions. So the parties would wind up in the exact same place: individualized arbitration.

In short, Plaintiffs-Appellees' effort to transform this straightforward dispute over arbitrability into a dispute over the Class Action Waiver does not pass muster.

## III. If the Court Decides the Arbitrability Question, It Should Hold that the Dispute is Arbitrable.

The arbitrator, not the Court, should decide the arbitrability question. But if the Court decides that question, it should hold that Plaintiffs-Appellees' claims are arbitrable.

Uber's Arbitration Agreement is not an "infinite" agreement, but instead covers only those disputes "arising out of or relating to" "(i) these Terms," as well as "(iv) [a user's] relationship with Uber." A-194-95 (Sullivan Decl. Ex. F at 56-57). Those provisions are broad, but broad arbitration provisions must be enforced. Indeed, "the existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info.*

19

*Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) (quotation marks omitted). "Doubts should be resolved in favor of coverage." *Id.* (quotation marks omitted). Plaintiffs-Appellees rely on case law stating that this interpretive rule applies only when arbitration agreements are ambiguous. Pl. Br. 56. But this Court has held that broad language like "arising out of or relating to" triggers the rule and requires courts to construe coverage generously. *See Paramedics*, 369 F.3d at 649, 653.

In any event, with or without a presumption of arbitrability, Plaintiffs-Appellees' claims are arbitrable. As Uber's opening brief explained (Uber Br. 33-35), Plaintiffs-Appellees' claims arise from and relate to the Terms of Use and Plaintiffs-Appellees' relationship with Uber. Plaintiffs-Appellees—all of whom use Uber's platform—contend that Uber's contracts with restaurants have unfairly anticompetitive terms. But Plaintiffs-Appellees' claim hinges on their theory that Uber and Postmates are "two-sided platforms" that, among other things, act as intermediaries to connect restaurants and consumers "to the benefit of both." A-27 (Am. Compl. ¶ 36). Thus, Uber's allegedly anticompetitive contracts with *restaurants* are inextricably intertwined with Uber's contracts with *users—i.e.*, the Terms of Use.

Moreover, Plaintiffs-Appellees' antitrust theory is premised on the notion that Uber's critical mass of users—and the "stickiness" of Uber's platform for these users—confers on Uber market power that allows it to retain customers without

improving its prices or services. That dynamic, in turn, Plaintiffs-Appellees say, operates to prevent restaurants from effectively offering lower prices on non-platform channels; restaurants would simply lose out on Uber's significant customer base. A-21 (*Id.* ¶¶ 3-5). Again, Plaintiffs-Appellees' use of and relationship with Uber is a constituent part of their theory of harm: their use of and relationship with Uber supplies Uber with the alleged market power that supposedly produces the anticompetitive effect.

Finally, Plaintiffs-Appellees' complaint makes clear that their goal is to change the price of meals that Uber users—including Plaintiffs-Appellees—pay for meals purchased using Uber's platform. A-59 (*Id.* ¶ 147) (stating that Plaintiffs-Appellees challenge policies that allegedly "force restaurants to increase the prices of items listed on Defendants' platforms"). Thus, Plaintiffs-Appellees seek an injunction altering the cost and availability of meals purchased using Uber's platform—including the cost and availability of meals *Plaintiffs-Appellees* purchase using that platform. Hence, Plaintiffs-Appellees' claims relate to Plaintiffs-Appellees' use of Uber's platform.

Plaintiffs-Appellees do not grapple with these points. Instead, Plaintiffs-Appellees assert that their claims do not *depend* on the Terms of Use, pointing out that there is a different plaintiff, Malik Drewey, who did not agree to the Terms of Use. Pl. Br. 59-64. Plaintiffs-Appellees' argument is an impermissible attempt to

rewrite the Arbitration Agreement.  The Agreement covers all disputes "arising out of or relating to" "(i) these Terms," as well as "(iv) your relationship with Uber."  If Plaintiffs-Appellees' claim arises from or relates to the Terms of Use, the claim is arbitrable, regardless of whether they could theoretically have brought the claim in the absence of the Terms of Use.

Plaintiffs-Appellees insist that "the relevant issue is whether the merits of Plaintiffs-Appellees' claims turn on Plaintiffs-Appellees' *particular* use of those platforms."  Pl. Br. 60-61.  Uber disagrees with that formulation, which conflicts with the plain language of the Arbitration Agreement.  But even assuming Plaintiffs-Appellees accurately described "the relevant issue," their claims would still be arbitrable.  Plaintiffs-Appellees allege that Uber's contracts with restaurants, which supposedly prevent restaurants from offering different pricing for meals sold through non-platform channels, have "produced substantial anticompetitive effects in the Restaurant Platform Market."  A-70 (*Id.* ¶ 201).  Plaintiffs-Appellees seek money damages.  Plaintiffs-Appellees' theory is that *if* Uber had not used those allegedly anticompetitive policies, *then* the price of meals, both on- and off-platform, would have been different.

If Plaintiffs-Appellees used Uber's platform to buy food, they will have to account for that use in their damages model.  To quantify the harm purportedly caused by Uber's policy, Plaintiffs-Appellees will have to show the amounts they

22

would have paid for meals *both* on the platform *and* off the platform in the absence of that policy. Plaintiffs cannot conveniently ignore on-platform purchases in their damages calculation to avoid an arbitration agreement. For example, if Uber's purportedly anticompetitive conduct caused off-platform harm but yielded an offsetting on-platform benefit, Plaintiffs will have to deduct those offsetting benefits from their damages model. As such, Plaintiffs-Appellees' claims arise from, and depend on, their "particular" use of Uber's platform.

## CONCLUSION

This Court should reverse the district court's order and remand with instructions to compel arbitration of the parties' arbitrability dispute.

Dated: September 14, 2023                Respectfully Submitted,

                     /s/ Adam G. Unikowsky
                    Adam G. Unikowsky
                    Elizabeth B. Deutsch
                    JENNER & BLOCK LLP
                    1099 New York Ave. NW, Suite 900
                    Washington, DC 20001
                    (202) 639-6000

*Counsel for Defendants-Appellants Uber Technologies, Inc., and Postmates, LLC*

23

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's order because it contains 5,208 words, excluding the exempted parts of the brief. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013, Times New Roman 14-point.

Dated:  September 14, 2023              By:  /s/ Adam G. Unikowsky

                                        Adam G. Unikowsky

24

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  September 14, 2023                    By:  /s/ Adam G. Unikowsky
                                                                    Adam G. Unikowsky

25