# 23-0521-cv(L), 23-0522-cv(CON)

# United States Court of Appeals
### *for the*
# Second Circuit

———————◆———————

MARIAM DAVITASHVILI, individually and on behalf of all others
similarly situated, ADAM BENSIMON, individually and on behalf
of all others similarly situated,

*Plaintiffs-Appellees,*

PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, NATHAN OBEY,

*Consolidated Plaintiffs-Appellees,*

MIA SAPIENZA, MALIK DREWEY,

*Plaintiffs,*

– v. –

GRUBHUB INC., DBA Seamless, POSTMATES INC., UBER
TECHNOLOGIES, INC., in its own right and as parent
of wholly owned subsidiary Uber Eats,

*Defendants-Appellants,*

DOORDASH INC.,

*Defendant.*

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## GRUBHUB INC.

DAVID J. LENDER
ERIC S. HOCHSTADT
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

ZACHARY D. TRIPP
*Counsel of Record*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

*Attorneys for Defendant-Appellant Grubhub Inc.*

# TABLE OF CONTENTS

Introduction ..................................................................................... 1

Argument ......................................................................................... 3

   I.  Plaintiffs formed a valid agreement to arbitrate because they placed Grubhub orders while on reasonable notice of the terms of Grubhub's offer .................................................................. 3

  II.  The arbitration agreement mandates arbitration of this dispute because it arises out of or relates to Plaintiffs' use of and relationship with Grubhub ............................................... 12

 III.  Even if this dispute did not fit within the "arise out of" or "relate to" language, arbitration would still be required because this is a "dispute with Grubhub" ...................................... 17

 IV.  Plaintiffs' broad arguments about the FAA are irrelevant and meritless................................................................................ 26

Conclusion...................................................................................... 31

Certificate of compliance ............................................................... 32

Certificate of service ..................................................................... 33

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ................................................................. 23

*Brower v. GATE-WAY 2000, Inc.,*
  676 N.Y.S.2d 569 (App. Div. 1998) ....................................... 22

*Carbajal v. H&R Block Tax. Servs., Inc.,*
  372 F. 3d 903 (7th Cir. 2004) ................................................ 23

*Coenen v. R. W. Pressprich & Co.,*
  453 F.2d 1209 (2d Cir. 1972) .......................................... passim

*Collins & Aikman Prods. Co. v. Building Sys. Inc.,*
  58 F.3d 16 (2d Cir. 1995) ......................................... 16, 17, 28

*CompuCredit Corp. v. Greendwood,*
  565 U.S. 95 (2012) ............................................................ 29, 30

*In re Conifer Realty LLC v. EnviroTech Servs., Inc.,*
  964 N.Y.S.2d 735 (App. Div. 2013) ................................. passim

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.,*
  835 F.3d 1195 (10th Cir. 2016) .............................................. 28

*Epic Sys. Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) ............................................................ 22

*Genesco, Inc. v. T. Kakiuchi & Co.,*
  815 F.2d 840 (2d Cir. 1987) ................................................... 14

*Gillman v. Chase Manhattan Bank, N.A.,*
  534 N.E. 2d 824 (N.Y. 1988) ....................................... 20, 21, 22

*Interstate Brands Corp. v. Bakery Drivers & Bakery Goods
  Vending Machines, Loc. Union. No. 5540,*
  167 F. 3d 764 (2d Cir. 1999) ................................................. 20

*Islam v. Lyft, Inc.,*
  524 F. Supp. 3d 338 (S.D.N.Y. 2021) .................................... 30

*Kurz v. Chase Manhattan Bank USA, NA,*
  319 F. Supp. 2d 457 (S.D.N.Y. 2004) .................................... 11

*Loc. Union 97, Int'l Broth. Of Elec. Workers, AFL-CIO v. Niagara
  Mohawk Power Corp.,*
  67 F.4th 107 (2d Cir. 2023) ................................................... 17

*Lobel v. CCAP Auto Lease, Ltd.*,
 74 Misc. 3d 1230(A) (N.Y. Sup. Ct. 2022) ............................................ 14

*Manning v. Energy Conversion Devices, Inc.*,
 833 F.2d 1096 (2d Cir. 1987) ................................................................... 6

*Mey v. DIRECTV, LLC*,
 971 F.3d 284 (4th Cir. 2020) ......................................................... passim

*Mey v. DIRECTV, LLC*,
 No. 17-cv-179, 2021 WL 973454 (N.D.W. Va. Feb. 12, 2021) ............. 25

*Meyer v. Uber Techs., Inc.*,
 868 F.3d 66 (2d Cir. 2017) .............................................................. passim

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985) .................................................................... 19, 28

*New Prime Inc. v. Oliviera*,
 139 S. Ct. 532 (2019) ............................................................................. 29

*Nicosia v. Amazon.com, Inc.*,
 834 F.3d 220 (2d Cir. 2016). ..................................................... 7, 9, 10

*Parm v. Bluestem Brands, Inc.*,
 898 F. 3d 869 (8th Cir. 2018) ................................................................ 23

*Pitta v. Hotel Ass'n of New York City, Inc.*,
 806 F.2d 419 (2d Cir. 1986) ............................................................ passim

*PPG Indus., Inc. v. Webster Auto Parts Inc.*,
 128 F.3d 103 (2d Cir. 1997) .................................................................... 5

*Revitch v. DIRECTV, LLC*,
 977 F.3d 713 (9th Cir. 2020) ........................................................... 25, 27

*Roby v. Corp. of Lloyd's*,
 996 F.2d 1353 (2d Cir. 1993) ................................................................ 14

*Sarhank Group v. Oracle Corp.*,
 404 F.3d 657 (2d Cir. 2005) .................................................................... 4

*Schnabel v. Trilegiant Corp.*,
 697 F.3d 110 (2d Cir. 2012) .................................................................. 12

*Selective Ins. Co. of Am. V. Cnty. Of Rensselaer*,
 47 N.E. 3d 458 (N.Y. 2016) ................................................................... 19

*Starke v. SquareTrade, Inc.*,
 913 F.3d 279 (2d Cir. 2019) ............................................................ 4, 10

*Starkey v. G Adventures, Inc.*,
    796 F.3d 193 (2d Cir. 2015) ............................................................. 11, 12

*State v. Philip Morris Inc.*,
    869 N.E. 2d 636 (N.Y. 2007) ................................................................ 19

*Tsadilas v. Providian Nat'l Bank*,
    786 N.Y.S.2d 478 (App. Div. 2004) ...................................................... 11

*U.S. Airways, Inc. v. Sabre Holdings*,
    938 F.3d 43 (2d Cir. 2019) .................................................................... 15

*Viking River Cruises, Inc. v. Moriana*,
    142 S. Ct. 1906 (2022) .......................................................................... 28

*VistaTech Enters., Ltd. v. Brother Int'l. Corp.*,
    677 F. Supp. 178 (S.D.N.Y. 1988) ........................................................ 24

*Wallace Indus., Inc. v. Salt City Energy Venture L.P.*,
    649 N.Y.S.2d 531 (App. Div. 1996) ...................................................... 24

*William A. White/Tishman E., Inc. v. Banko*,
    566 N.Y.S.2d 628, 629 (1991) .............................................................. 19

*Zheng v. Live Auctioneers LLC*,
    20-cv-9744 (JGK), 2021 WL 2043562 (S.D.N.Y. May 21, 2021) ........... 4

## Statutes

Federal Arbitration Act, 9 U.S.C. 1 et seq.:
    9 U.S.C. 2 ..............................................................22, 27, 29, 30
    9 U.S.C. 4 ............................................................................... 6

## Miscellaneous

David Horton, *Infinite Arbitration Clauses*,
    168 U. Pa. L. Rev. 633 (2020) .............................................................. 27

# INTRODUCTION

Plaintiffs devote much of their brief to sweeping legal arguments and wild hypotheticals. But this is a specific case with specific facts, and Plaintiffs cannot defend the district court's decision on the record.

First, under *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017), Plaintiffs formed a valid contract governed by Grubhub's Terms of Use ("Agreement") because they placed Grubhub orders while on notice of the terms of the offer: Immediately below the order button, Grubhub notified users that, "[b]y placing your order, you agree to Grubhub's terms of use," with a hyperlink to those terms. JA 120, 122.

Plaintiffs argue that Grubhub failed to provide evidence of Grubhub's interface "at the time that [they] placed orders." But Grubhub submitted the Koreis declaration within *days* of four Plaintiffs placing orders, and that declaration included screenshots of "*the Grubhub checkout page*." JA 114-115 (¶¶ 10, 13) (emphasis added). Plaintiffs pointedly fail to deny that they used the depicted interface, and failed to introduce any evidence to rebut contract formation. The evidence is therefore one-sided: Plaintiffs entered into a valid contract.

Second, on arbitrability, the Agreement mandates arbitration because this dispute "arise[s] out" or "in any way relate[s] to" the Agreement or relationship. JA 143. This is a suit by a website's users challenging its

1

pricing practices, which Plaintiffs allege alter Grubhub's services and pricing both on and off the platform.

Plaintiffs assert (Br. 5, 12) that the FAA does not require arbitration of claims that are "wholly independent" from the contract. But this dispute is *not* "wholly independent" from the contract, and Plaintiffs have little to say to rebut the multiple links between this dispute and the Agreement. Plaintiffs ignore their own allegation that Grubhub's conduct impacted Grubhub's prices and services on the platform by reducing its incentive to offer "better technology or better service" or to charge "lower Consumer Commission Rates." JA 37 (¶ 74). Plaintiffs also would have different damages because Grubhub's policy allegedly reduced on-platform prices, thus causing restaurants to increase off-platform prices. And the Agreement provides that on-platform prices "may differ" from off-platform prices, further reinforcing the link between the Agreement and this disptue.

Plaintiffs emphasize that a non-Grubhub user (Drewey) raised the same antitrust claims. That merely shows that entering into the Agreement is not the but-for cause of the claims. But that does not help Plaintiffs because the arbitration provision does not require but-for cause. Instead, it reaches any dispute arising from or relating to Grubhub's "performance," "payments to and from Grubhub," or the person's "use of" or "relationship with" Grubhub. JA 143. This case fits the bill.

Third, even if this case did not arise from or relate to the contract or relationship, arbitration would still be required because Plaintiffs promised to arbitrate "any other dispute with Grubhub." JA 143. This Court, New York courts, and this Court's sister circuits have consistently mandated arbitration under such language. *E.g.*, *Pitta v. Hotel Ass'n of New York City, Inc.*, 806 F.2d 419, 423 (2d Cir. 1986); *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir. 1972); *In re Conifer Realty LLC (EnviroTech Servs., Inc.)*, 964 N.Y.S.2d 735, 737-40 (N.Y. App. Div. 2013); *Mey v. DIRECTV, LLC*, 971 F.3d 284 (4th Cir. 2020). Among others, *Mey* rejected the approach of "interpretation by hypothetical." 971 F.3d at 294.

In any event, this Court need not decide any question about the outer reaches of the Agreement because the "any other dispute" language would only come into play if this dispute fell outside the familiar "arises from" or "relates to" language. It fits squarely within that language, so arbitration is required. This Court should reverse.

## ARGUMENT

**I.  Plaintiffs Formed A Valid Agreement To Arbitrate Because They Placed Grubhub Orders While On Reasonable Notice Of The Terms Of Grubhub's Offer**

1.  Plaintiffs contend (Br. 13) that they "never affirmatively assented to Grubhub's Terms." *See id.* at 5. But Plaintiffs affirmatively placed orders on Grubhub. And they do not dispute that, so long as they were on

3

reasonable notice of the terms of Grubhub's offer, they became bound when they placed orders and thereby accepted those terms. *See id.*; *see also id.* at 20-22; *Meyer*, 868 F.3d at 78-80.

The question is therefore whether Plaintiffs were on reasonable notice at the time they placed orders. They were. They ordered when, immediately below the order button, Grubhub had notified them that "[b]y placing your order, you agree to Grubhub's terms of use"—with a hyperlink to the terms. JA 114 (¶ 10). And Grubhub had previously sent each Plaintiff an email specifically notifying them that continued use of Grubhub would manifest assent, including to the updated "dispute resolution and arbitration agreement, which explains how legal disputes are handled." JA 114-115 (¶ 12).

Plaintiffs address the webpage and email separately, asserting that each is insufficient standing alone. *See* Br. 23-33. Those contentions fail on their own terms, but also the premise is unfounded. The adequacy of notice is assessed not in isolation on a piecemeal basis, but based on the "totality of the circumstances." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 297 (2d Cir. 2019); *see Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 662 (2d Cir. 2005) ("totality of the evidence"); *Zheng v. Live Auctioneers LLC*, 20-cv-9744 (JGK), 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) (citation omitted).

Plaintiffs nowhere respond to the cumulative effect of (1) each Plaintiff already being a Grubhub customer; (2) Grubhub emailing each Plaintiff to specifically notify them that continued use would manifest assent; (3) each Plaintiff thereafter continuing to place Grubhub orders; when (4) immediately below the order button, Grubhub again notified them that placing an order would manifest assent. That is more than enough.[1]

Plaintiffs contend (Br. 24) that Grubhub "did not submit evidence to show how its checkout page 'was presented' to [them] and thus failed to meet its *initial* burden." But Grubhub carried that burden by submitting a declaration from its then Senior Director of Pricing, Thomas Koreis, stating that "each of these plaintiffs have placed orders," attaching screenshots of the interface, and averring that those pictures "depict[] *the Grubhub checkout page*." JA 114 (¶ 10); JA 118 (emphasis added). Koreis signed and submitted his declaration on August 26, 2022—within *two days* of the Plaintiffs' latest order, on August 24, 2022. JA 114 (¶ 10); JA 115 (¶ 13).[2]

---

[1] Four of the Plaintiffs even placed orders after Grubhub had invoked arbitration in its Answer, ECF No. 58 at 60 (April 29, 2022); *see* JA 13. That answer provided "clear indication" of Grubhub's "intention to invoke [] arbitration rights." *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 109 (2d Cir. 1997).

[2] Four of the Plaintiffs placed orders the same week as the declaration, (between August 22, 2022 and August 24, 2022), and the remaining two placed orders within six months (March 12, 2022 and May 19, 2022). JA 115 (¶ 13).

So, "the Grubhub checkout page" interface referenced in Koreis' declaration was "the Grubhub checkout page" Plaintiffs viewed when they placed their orders.

Plaintiffs conspicuously fail to deny that those screenshots depict the interface they used. They also ignore the text of the declaration and its timing. They provide no basis for inferring that Grubhub changed its interface within days of Koreis declaring that the screenshots depicted "the Grubhub checkout page." "A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the [summary] trial contemplated by 9 U.S.C. § 4." *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987). Yet Plaintiffs introduced no declaration, so they have no "evidentiary facts" on which to rely.

2.    Plaintiffs concede (Br. 25) that Grubhub's "mobile application" provided sufficient notice of the terms of Grubhub's offer. Plaintiffs challenge only Grubhub's webpage. *Id.* But the webpage provides reasonable notice as well: Just like the mobile interface, the webpage has a "place order" button and, immediately below it, black text advising users "[b]y placing your order, you agree to Grubhub's terms of use and privacy policy," with a blue hyperlink to those terms. JA 120, 122; accord *Meyer*, 868 F.3d at 71. That is the "twenty-first century equivalent of printing terms

6

on the back of a hard-copy form, and clicking the link is the twenty-first century equivalent of turning the document over." Chamber Br. 26-27.

Plaintiffs emphasize (Br. 27-30) that notice must be "spatially" and "temporally" coupled with the transaction. It was. Just like Grubhub's mobile interface, the webpage provided notice at the time of contract formation, when a user was entering into a transaction with Grubhub to purchase services and would reasonably expect that transaction to be governed by stated terms. *See* Chamber Br. 29. And the notice has the same positioning—*immediately below* the order button—and the same wording and hyperlinks—"[b]y placing your order, you agree to Grubhub's terms of use"—as the mobile interface.

Plaintiffs assert (Br. 25) that Grubhub's webpage is "cluttered" like the Amazon order page in *Nicosia v. Amazon.com*, Inc., 834 F.3d 220 (2d Cir. 2016). But the *Nicosia* page looks completely different:



Grubhub Web Interface. JA 122 (annotated).



Amazon Interface. *Nicosia*, No. 15-423, slip op. at 41 (annotated).

The *Grubhub* interface is thus plain and simple, whereas the *Nicosia* interface was loud and "distracted the reader from the relevant hyperlink." *Starke*, 913 F.3d at 293.

Plaintiffs try to turn the comparison into a counting exercise (Br. 25), but fail to explain how Grubhub's interface "distract[ed] the reader from the relevant hyperlink." *Starke*, 913 F.3d at 293. In *Nicosia*, the notice and the order button appeared in completely different areas of the page. By contrast, Grubhub's notice is immediately below the button.

Indeed, the notice and button are *even closer* than the checkout page this Court upheld in *Meyer*, where a "PayPal" button and a "Google Wallet" button separated the button from the notice. *See* Opening Br. 30. Plaintiffs' counting exercise also fails on its own terms. For example, they emphasize (Br. 25) that Grubhub's webpage includes 11 links. The *Nicosia* page included "between 15 and 25." 834 F.3d at 236-37.

Plaintiffs emphasize (Br. 26) that Grubhub's page asked users if they wanted to donate to the Grubhub Community Fund. But that single question about giving to charity is far less obtrusive than the multiple promotions on the *Nicosia* interface, which included promotions for "FREE Two-Day Shipping four times in the center of the page" and urged users to "try Amazon Locker." *Nicosia*, 834 F. 3d at 236.

10

3. Grubhub's email provided yet more reasonable notice under *Starkey v. G Adventures, Inc.*, 796 F.3d 193 (2d Cir. 2015). Plaintiffs describe it (Br. 29) as a "purported email." But again, the record is one-sided. The unrebutted evidence establishes that Grubhub "emailed customers, including plaintiffs." JA 114-115 (¶ 12). Plaintiffs pointedly fail to deny that they received it. And they introduced no evidence to rebut Grubhub's declaration. Grubhub's declaration is therefore enough to establish notice, as Plaintiffs introduced no evidence to rebut the mailbox rule. For example, in *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004), the court relied on a mailbox rule case to find it sufficient for notice purposes that the defendant "sent the arbitration provision to plaintiff." *Id.* at 480 (citing *Kurz v. Chase Manhattan Bank USA, NA*, 319 F. Supp. 2d 457, 464 (S.D.N.Y. 2004)).

Plaintiffs contend (Br. 30) they "had no reason to expect Grubhub to email the Terms to them." But Grubhub sent the email to its "customers, including each plaintiff." JA 114-115 (¶ 12). Grubhub thus sent the email to individuals with whom it had a prior "course of dealing." A reasonable person who is an existing customer of an online service can expect to receive emails regarding that service. (It would be surprising not to receive emails.) And assent required the user to place yet another Grubhub order and thus engage in yet another transaction and see yet more notice.

11

Plaintiffs rely (Br. 29-30) on *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012), but that case is fundamentally different. In *Schnabel*, this Court held that an email did not put recipients on reasonable notice that "a failure to act affirmatively to cancel [their] membership will, alone, constitute assent." *Id.* at 123. This Court emphasized that "continued credit-card payments, which were auto-debited," were "too passive" to treat as assent. *Id.* at 128. By contrast, this case does not involve a mere passive failure to act. Grubhub's email required "continued use of Grubhub"—that is, the affirmative act of placing an additional order. JA 114 (¶ 10); JA 120; JA 122. And when Plaintiffs placed additional orders, Grubhub *notified them yet again* that doing so would manifest assent.

Under *Meyer* and *Starkey*, the interface *or* the email alone would provide sufficient notice. The combination is even more clearly sufficient. The district court therefore erred in holding that Plaintiffs had not entered a valid agreement.

## II. The Arbitration Agreement Mandates Arbitration Of This Dispute Because It Arises Out Of Or Relates To Plaintiffs' Use Of And Relationship With Grubhub

The Agreement requires arbitration because Plaintiffs promised to arbitrate "all" claims or disputes that "arise[] out of the … performance of [the] Agreement or payments by or to Grubhub," or "in any way relate to" their "use of" and 'relationship with Grubhub." JA 143. This dispute fits

12

the bill. Plaintiffs allege that Grubhub's "performance" (governed by the Agreement) forced restaurants to charge lower prices on the platform, thus impacting "payments by or to Grubhub" under the contract and reducing Grubhub's incentive to improve its prices ("payments") or services ("performance"). *Id.* Grubhub's terms provide that on-platform prices "may differ" from off-platform prices, JA 127, thus underscoring the link between the Agreement and prices charged on the other side of Grubhub's two-sided market. And Grubhub's allegedly "sticky" relationships with its customers—its customer relationships formed through transactions with customers and governed by the Agreement—form the basis of the alleged market power.

1.   Plaintiffs assert that this dispute is "wholly independent" from the contractual relationship. *E.g.*, Br. 5, 12, 20, 59, 62. But Plaintiffs have little to say to support that assertion. In particular, Plaintiffs cannot rebut the multiple relationships between this dispute and the underlying contract and the relationship it governs.

First, Plaintiffs emphasize (Br. 19-20) that one plaintiff (Drewey) brought the same claims without using Grubhub. That merely shows that being a Grubhub user is not a but-for cause of the claims. But the Agreement does not require a but-for causal link. Rather, it reaches any dispute that "arises out of the … *performance* of [the] Agreement or *payments* by

or to Grubhub," or "in any way *relate[s]* to" their "*use of*" and "*relationship with* Grubhub." JA 143 (emphases added).[3]

Second, this case plainly arises out of or relates to the Agreement's provision that off-platform prices "may differ" from on-platform prices. *Lobel v. CCAP Auto Lease, Ltd.*, 74 Misc. 3d 1230(A) (N.Y. Sup. Ct. 2022). Plaintiffs contend that the pricing provision does not "confer rights" and is not "at issue." But that is language in a binding contract. And the relationship between on-platform and off-platform pricing is very much "at issue." It is the heart of this lawsuit.

Plaintiffs assert (Br. 62-63) they are only seeking damages for meals purchased off-platform, and (Br. 58) that the "complaint does not even mention the Terms or whether Plaintiffs-Appellees[] used Defendants platforms." But Plaintiffs fail to address the principle that arbitration "[depends] on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). Plaintiffs thus cannot evade arbitration by gerrymandering their complaint. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993).

---

[3] It is irrelevant that the Agreement is not the "source" (Br. 19) of Plaintiffs' antitrust claims. The arbitration provision does not require that the Agreement be the "source"; it reaches disputes "based in … statute." JA 143.

Plaintiffs' gerrymandering also fails on its own terms. Even if they could prove their antitrust claims, Plaintiffs would still have different damages because they are Grubhub customers who placed on-platform orders. As this Court explained in *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 59 (2d Cir. 2019), "[i]n a market encompassing both sides of the platform, … if prices charged to [one side] are less—or incentive payments made are greater—than those that would be observed in a competitive market, then that difference must be accounted for in determining [plaintiff's] damages, if any." And although this case involves off-platform pricing by restaurants, the premise of Plaintiffs' lawsuit is that restaurants' off-platform pricing is influenced by, and thus related to, their on-platform pricing. That link is alone sufficient to establish the requisite relationship.

Third, Plaintiffs entirely ignore other relationships between this dispute and the Agreement. For example, they ignore their own allegations (*see* Grubhub Br. 13, 21, 54) that the wrongdoing harmed Grubhub users by alleviating Grubhub's need to offer "better technology or better service" or to charge "lower Consumer Commission Rates." JA 37 (¶ 74). That allegation manifestly arises out of "performance of [the] Agreement or payments by or to Grubhub," and relates to their "use of" and "relationship with Grubhub." JA 143.

Plaintiffs similarly ignore their own allegations that Grubhub's "sticky" relationships with its customers—including Plaintiffs—give Grubhub market power. *E.g.*, JA 31 (¶ 51), 48 (¶ 106). Why would the Complaint repeatedly describe those "sticky" relationships if their claims did not arise from or relate to those relationships? They do not say.

Plaintiffs assert (Br. 60) that allegations about "consumer use of Defendants' platforms *generally* (to establish market power or for some other purpose)" are irrelevant, because "Plaintiffs' claims turn on Plaintiffs' *particular* use of those platforms." That is a nonstarter.[4] Plaintiffs' antitrust claims arise out of and relate to *both* their "particular use" of Grubhub *and* the aggregate effect of millions of users' (including Plaintiffs) "sticky" relationships with Grubhub. They cannot bring an antitrust claim without proving that all of those relationships combine to give Grubhub market power. Plaintiffs also cannot separate themselves from the class they seek to represent.

Fourth, Plaintiffs assert that this dispute involves "no question involving … the parties' rights and obligations" under the Agreement. (Br. 16 (quoting *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). Yes it does. It arises out of Grubhub's performance and

---

[4] Plaintiffs' admission that their claims "turn on" their "particular use" of Grubhub further shows that arbitration is required because that confirms the dispute arises out of or relates to their "use of" Grubhub. JA 143.

pricing practices (including practices the Agreement addresses) and relates to Plaintiffs' use of and relationship with Grubhub (which the Agreement also defines and governs). *Collins & Aikman* also explains that the "goal is always to enforce the agreement to arbitrate on its terms." 58 F.3d at 21. "Ordinary principles of contract law guide the inquiry into whether the parties consented to arbitrate a particular dispute." *Loc. Union 97, Int'l Bhd. Of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023) (citation omitted). Under those ordinary principles, arbitration is required.

Fifth, the Agreement expressly provides that it "is intended to be broadly interpreted." JA 143. Plaintiffs quibble (Br. 57), about the FAA's presumption of arbitrability. But presumptions do not matter here. Under "[o]rdinary principles of contract law," *Niagara Mohawk*, 67 F.4th at 114, the Agreement requires interpreting the promise broadly because that is what it says. And interpreting the Agreement broadly makes it even clearer that arbitration is required. This Court accordingly should reverse.

## III. Even If This Dispute Did Not Fit Within The "Arise Out Of" Or "Relate To" Language, Arbitration Would Still Be Required Because This Is A "Dispute With Grubhub"

Plaintiffs devote much of their brief to attacking the catchall language in Grubhub's arbitration provision, which reaches "any other dispute with

17

Grubhub." JA 143. But those arguments are irrelevant for multiple reasons, and regardless lack merit.

1. At the outset, this Court need not address those arguments because this dispute "arise[s] out of the … performance of [the] Agreement or payments by or to Grubhub," or "in any way relate to" their "use of" or "relationship with Grubhub." JA 143. Arbitration is therefore required without regard to any question about the catchall language.

2. Even if this Court were to reach the catchall, arbitration would be required even under Plaintiffs' own construction of that language. They assert (Br. 47-48) that it requires arbitration of "disputes connected in some way" to Grubhub's terms. *See id.* at 47 ("disputes connected in some way to the service agreement"). As set forth above, this dispute *is* "connected in some way" to the Agreement because it arises from and relates to Grubhub's performance and pricing practices: It alleges a misuse of Grubhub's relationships with its customers (governed by the Agreement) that allegedly reduced the quality of on-platform services and altered on-platform pricing (governed by the Agreement), and allegedly increased off-platform prices (addressed by the Agreement). Arbitration therefore is required without getting into any dispute about the catchall.

3. In any event, the catchall language is enforceable according to its plain terms. Plaintiffs assert (Br. 42) that it would be "absurd" to read that

language to apply here. But under New York law, absurdity is a canon for construing ambiguity. *E.g., William A. White/Tishman E., Inc. v. Banko*, 566 N.Y.S.2d 628, 629 (1991). Absent ambiguity, courts are "not free to alter the contract to reflect personal notions of" absurdity. *Selective Ins. Co. of Am. v. County of Rensselaer*, 47 N.E.3d 458, 461 (N.Y. 2016).

Plaintiffs do not identify any ambiguity in whether this is a "dispute with Grubhub." JA 143. There is none. That language is even clearer in context: it appears after the familiar "arise out of" or "relate to" language, which already reaches any dispute with "a connection with" the subject matter. *State v. Philip Morris Inc.*, 869 N.E.2d 636, 639 (N.Y. 2007); *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985). So the "any other dispute with Grubhub" language must reach farther, with the obvious—and sensible— purpose of ensuring that any dispute between Grubhub and its customers is resolved by arbitration. *See Mey*, 971 F.3d at 293-294 (interpreting similar language in context).

Plaintiffs assert (Br. 3) that such a promise is "novel." It is not. Grubhub cited (Br. 61-62, 65-66) multiple cases (*Pitta*, *Conifer Realty*, and *Mey*), going back decades, mandating arbitration under similar terms. There are more. For example, in *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir. 1972), this Court mandated arbitration of a dispute between members of the New York Stock Exchange, pursuant to a provision that

required arbitration of "[a]ny controversy between parties who are members." Notably, the dispute predated contract formation, but this Court mandated enforcement, explaining that the "purpose behind the drafting of such a broad arbitration clause was, as much as possible, to keep disputes between members out of the courts." *Id.* So too here.[5]

Plaintiffs contend (Br. 44-45) that those cases did not address whether the promise was overbroad. But whether "the contracts at issue [we]re unconscionable" was "the crux of petitioner's appeal" in *Conifer Realty*. 964 N.Y.S.2d at 739. The court upheld the clause as valid, explaining that the record "d[id] not support petitioner's assertion that it lacked a meaningful choice in retaining [the defendant's] services." *Id.*

Plaintiffs provide no sound basis for reaching a different result. They cannot show procedural or substantive unconscionability, much less both.

First, they cannot show procedural unconscionability because, as in *Conifer Realty*, Plaintiffs had a meaningful choice in retaining Grubhub's services: They could have used a different platform or declined to use any platform and instead ordered directly from restaurants. *See Gillman v.*

---

[5] *See also*, *e.g.*, *Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Loc. Union No. 550*, 167 F.3d 764, 768 (2d Cir. 1999) (holding that such a provision was "reasonably read to reach matters that go beyond the application and interpretation of the Agreement.").

*Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (focusing on lack of "meaningful choice").

Plaintiffs assert (Br. 52) that they lacked meaningful choice because "restaurants" are "not reasonable alternatives" and co-defendants Uber and Postmates impose similar terms. That is nonsense. Plaintiffs brought a *class action* on behalf of people who use restaurants as an alternative, namely: "all persons … who have purchased goods, for takeout from or delivery by the restaurant, directly from a [participating restaurant," as well as "all persons … who have purchased goods, for dining in the restaurant." JA 65 (¶ 173); JA 66 (¶ 174). They also seek to represent a class of people who purchased "through a non-Defendant Restaurant Platform." JA 66 (¶ 175). Plaintiffs specifically allege that these classes are "so numerous that joinder of all members is impracticable," and they believe the numbers are "in the millions." JA 66 (¶ 178).

Moreover, Plaintiffs devote much of their brief (e.g., Br. 1, 16, 20-21, 63-64) to arguing that this case does not even relate to Grubhub's platform or services because people (including their co-plaintiff Drewey) can order from participating restaurants without using Defendants' platforms. Plaintiffs' own contentions thus establish that they had a meaningful alternative. The contract is therefore valid under New York law.

21

Plaintiffs assert without qualification (Br. 51-52) that "procedural unconscionability is not required." But it is required "[a]s a general matter." *Brower v. GATEWAY 2000, Inc.*, 676 N.Y.S.2d 569, 573 (App. Div. 1998) (quoting *Gillman*, 534 N.E.2d at 828). And although "there have been exceptional cases" where a contract "is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone," *Gillman*, 534 N.E.2d at 829, Plaintiffs never even identify that narrow exception, much less argue why it is satisfied. It is not. *Conifer Realty* relied on lack of procedural unconscionability to enforce a materially identical contract. 964 N.Y.S.2d at 739.

Second, on substantive unconscionability, Plaintiffs *never argue* that the Agreement is substantively unconscionable as applied to the facts of this case. Plaintiffs also never explain why arbitrating a dispute, rather than litigating it, rises to the level of being substantively unconscionable, which requires that the Agreement be "unreasonably favorable" to the other side. *Gillman*, 534 N.E.2d at 828.

Plaintiffs' silence suggests the same hostility towards arbitration that Congress enacted the FAA to eliminate. "Congress directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018) (quoting 9 U.S.C. 2). "Congress enacted the FAA 'precisely to still'

any "cry of 'unconscionable!' [that] just repackages the tired assertion that arbitration should be disparaged as second-class adjudication." Chamber Br. 18 (quoting *Carbajal v. H&R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004)).

As further evidence of that hostility, Plaintiffs emphasize that the Agreement includes a class waiver, using the phrase "class action waiver(s)" 51 times. *E.g.*, Br. 3, 4, 5, 6, 10, 11, 12, 13, 14, 35, 36, 37, 38, 39. But the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), held that the FAA preempted a state-law rule that rendered arbitration unconscionable if it included a class waiver. *Id.* at 342-43. That argument thus fails as a matter of law.

Rather than claiming that the Agreement is actually unconscionable as applied here, Plaintiffs invoke (Br. 3) hypotheticals involving self-flying planes in the year 2053. But as the Fourth Circuit explained in *Mey*, such hypotheticals are irrelevant: "[T]he question before us today is not abstract; it is tethered to the facts of this dispute and the categories of claims specifically included in this arbitration agreement." 971 F.3d at 294. The Fourth Circuit thus followed the Eighth Circuit in "rejecting interpretation by hypothetical." *Id.* (citing *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 878 (8th Cir. 2018)).

Reliance on hypotheticals would be particularly inappropriate because, as Grubhub emphasized (Br. 11, 60), the Agreement has a severability clause: It ensures that, even if the Agreement is invalid as applied in some circumstances, "[t]he remainder of this Agreement shall continue to be enforceable and valid." JA 147. Yet Plaintiffs do not even mention severability.

Existing contract law doctrines would also distinguish Plaintiffs' hypotheticals. For example, the Agreement does not state whether it remains in place into perpetuity, for decades after a person has ceased to be a Grubhub customer. That would generate ambiguity about whether the contract remains in force, given the desuetude of the relationship, thus providing room for absurdity and other canons of construction to apply. *See Wallace Indus., Inc. v. Salt City Energy Venture L.P.*, 49 N.Y.S.2d 531, 533 (App. Div. 1996) ("[S]ilence as to a particular issue can, at times, create an ambiguity in a contract requiring the introduction of extrinsic evidence."); *e.g.*, *VistaTech Enters., Ltd. v. Brother Int'l Corp.*, 677 F. Supp. 178, 180 (S.D.N.Y. 1988) (looking to extrinsic evidence to determine whether a contract lasted into perpetuity).

Plaintiffs can make no such arguments. They placed orders *during this lawsuit*—including four who ordered after Grubhub had already invoked arbitration as an affirmative defense. *See* p. 5 n.1, *supra*. So the

timing cuts powerfully in favor of Grubhub. And it is entirely unambiguous that the Agreement applies: It covers "all" disputes arising from or relating to the relationship, as well as "any other dispute with Grubhub." This is plainly a "dispute with Grubhub."

Plaintiffs note (Br. 44) that the district court on remand in *Mey* found that the agreement was unconscionable. *Mey v. DIRECTV, LLC*, No. 17-cv-179, 2021 WL 973454 (N.D.W. Va. Feb. 12, 2021). But the unconscionability found there is absent here. There, the defendant (DIRECTV) moved to compel arbitration by a person who *had never been* a customer because (1) she had signed an arbitration agreement with AT&T Mobility; (2) three years later, AT&T Mobility's corporate parent acquired DIRECTV; and (3) the arbitration agreement covered disputes with "affiliates." *Id.* at *5. The decision thus focused specifically on whether it was unconscionable to reach as-yet acquired future affiliates. *Id.* In *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), the Ninth Circuit addressed the same fact pattern and found it ambiguous whether "affiliates" reaches "(yet-unknown) corporate entities that might later become affiliated with the service provider." 977 F.3d at 720. The Ninth Circuit construed the contract not to reach such yet-unknown affilitaes. *See id.*

This case is fundamentally different. Plaintiffs sued Grubhub. They are Grubhub customers. They placed orders on Grubhub during this lawsuit. And Grubhub is seeking to arbitrate. There is thus no unconscionability and no ambiguity.[6] The relevant decisions are instead *Pitta*, *Coenen*, *Conifer Realty*, and the Fourth Circuit's decision in *Mey*. Arbitration therefore is required both under the "arises from" and "relates to" language, as well as under the catchall "any other dispute with Grubhub" language.

## IV. Plaintiffs' Broad Arguments About The FAA Are Irrelevant And Meritless

1.   Plaintiffs argue in places (Br. 16-21) that the FAA applies only if the contract containing the arbitration clause is the but-for cause of the claim. But Plaintiffs do not appear to believe that theory and elsewhere articulate a very different rule. They describe the arbitration clause (Br. 2) as "paradigmatic" broad clauses that reach claims merely relating to the transaction or agreement. They explain (Br. 3) that disputes that "relate to Defendants' Terms or the customer's use of Defendants' platforms" would be arbitrable. They challenge (Br. 3) arbitration of disputes "unrelated to the agreement." They defend (Br. 4) the district court's decision "with respect to claims that lacked a sufficient nexus with Defendants' Terms." And they assert (Br. 5) that the question presented is "[w]hether

---

[6] The Agreement does not reach corporate "affiliates." *See* JA 124 (excluding services provided by Grubhub's affiliate "LevelUp").

Section 2 of the FAA applies where, as here, the dispute is wholly independent from the agreement containing the arbitration clause."

As explained above, see pp. 12-17, *supra*, this dispute is not "wholly independent" from the Agreement. Rather, it "arise[s] out of the … performance of [the] Agreement or payments by or to Grubhub," or "in any relate[s] to" their "use of" and 'relationship with Grubhub," JA 143, which the Agreement itself governs. The FAA therefore mandates arbitration under that familiar language.

2. To the extent Plaintiffs advocate a but-for causation rule, it fails at every level. Plaintiffs rely (Br. 17-18) on Judge O'Scannlain's concurrence in *Revitch* and a law review article. *See* David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633 (2020). But those sources are not precedent—and they reject Plaintiffs' purported rule. Judge O'Scannlain explained that, in his view, "arising from" in Section 2 is "broader" than "caused by," and reaches disputes "relating to the interpretation and performance of the contract." *Revitch*, 977 F.3d at 722 (citation omitted). The article similarly rejects a but-for rule. Instead, it advocates a "nexus" requirement that the dispute be "tied to in some meaningful way to the parties' agreement." Horton, *supra*, at 643.

Those sources rejected a causation rule for good reason, as a mountain of precedent forecloses that rule. This Court has described an agreement

covering "any claim or controversy arising out of or relating to the agreement" as "*the paradigm* of a broad [arbitration] clause." *Collins & Aikman*, 58 F.3d at 18, 20 (emphasis added). For example, the Supreme Court in *Mitsubishi Motors* relied on "in relation to" language to hold that the FAA requires arbitration of an antitrust claim—that is, a claim arising under a federal statute—because it "touch[es] matters covered by" the underlying subject matter. *See* 473 U.S. at 617 n.13. And this Court (and its sister circuits) have likewise held that the FAA applies to disputes that predated the agreement to arbitrate, which is plainly inconsistent with a causation rule. *E.g.*, *Coenen*, 453 F.2d at 1211; *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016).

Plaintiffs rely (Br. 18) on a footnote in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919 n.4 (2022), to assert that "there must be some 'causal relationship' between the agreement and the dispute." But the critical word "must" is Plaintiffs' own creation. The Supreme Court noted that the FAA applied because the contractual relationship "[was] a but-for cause of any justiciable legal controversy between the parties," and "'arising out of' … *normally* refers to a causal relationship." *Id.* (emphasis added). The Court thus merely determined a but-for causal link was sufficient, not that it was required. The Court did not silently overrule decades of case law and revolutionize arbitration law in a footnote.

3.   As the Fourth Circuit held in *Mey*, and consistent with this Court's decisions in *Pitta* and *Coenen*, the FAA requires enforcement of a materially identical agreement according to its terms, without requiring an additional "nexus": The Court invoked Section 2 of the FAA, 9 U.S.C. 2, and explained that, "[a]s with any contract, it is not our place to disturb the parties' bargain or relieve a party of the obligations to which it agreed." 971 F.3d at 295.

That is because the FAA "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp.* v. *Greenwood*, 565 U.S. 95, 97-98 (2012). Section 2 renders enforceable a "written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. 2. Section 2 thus applies to a "written provision" in a contract that lies in "the field in which Congress was legislating." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (citation omitted); *see id.* ("the parties' arbitration agreement" must "appear[] in a contract that falls within the field §§ 1 and 2 describe.").

The Agreement has a single arbitration provision. *See* JA 143. It is "written." 9 U.S.C. 2. And it appears in "the field in which Congress was legislating." *New Prime*, 139 S. Ct. at 538. It is a "contract evidencing a

transaction involving commerce," 9 U.S.C. 2, and is an arbitration provision because it provides that the parties will "settle by arbitration a controversy thereafter arising out of such contract or transaction." *Id.*

A written arbitration provision in such a contract does not cease to be protected by the FAA if it also requires arbitration of more disputes. Rather, it continues to provide for the "settle[ment] by arbitration a controversy thereafter arising out of such contract or transaction," *id.*, and thus still satisfies the statutory requirements. Section 2 thus renders such a "written provision" enforceable so long as it encompasses such disputes. 9 U.S.C. 2. Quite simply, the FAA "requires courts to enforce agreements to arbitrate according to their terms," *CompuCredit*, 565 U.S. at 98, and the Agreement's terms plainly mandate arbitration.

The entire provision is also fully enforceable under New York law. "[T]he inapplicability of the FAA does not render an arbitration clause void when it is otherwise enforceable under state law." *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 359 (S.D.N.Y. 2021). Plaintiffs assert (Br. 21) that Grubhub has "not argued" that state law "compels arbitration." But Grubhub's brief is replete with arguments that New York law requires enforcing the contract as written. *E.g.*, Br. 24, 25 & n.4, 32, 33, 34, 36, 38, 62-67.

In any event, there is no need for this Court to resolve any novel question about the catchall language because this dispute is arbitrable under

the familiar "arises out of" or "relates to" language in this Agreement. The FAA therefore requires arbitration of this dispute.

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand with instructions to grant Grubhub's motion to compel arbitration.

Respectfully submitted,

David J. Lender
Eric S. Hochstadt
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

/s/ Zachary D. Tripp
Zachary D. Tripp
 *Counsel of Record*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

September 14, 2023

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 6,114 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced type-face using Century Schoolbook font in 14 point size.

/s/ Zachary D. Tripp

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

September 14, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ Zachary D. Tripp
Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

September 14, 2023