MYRNA PÉREZ, *Circuit Judge*, concurring:

The specifics of this dispute concern a distinctly modern form of online contract formation, but this is just another skirmish in a long-running battle over the enforcement of arbitration agreements.[1] I join this Court's well-reasoned opinion in full. I write separately to emphasize two important limits on merchants' ability to force consumers into arbitration that we recognize and reinforce in our holdings as to Grubhub.

---

[1] *See, e.g.*, *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024) (declining to enforce arbitration agreements that waived "statutory remedies under" ERISA); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (holding that downloading software did not constitute acceptance of terms and therefore plaintiffs were not bound by arbitration clause contained therein); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (1987) (holding arbitration agreement was enforceable and holding certain claims were covered by arbitration agreement but others were not); *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 364–66 (2d Cir. 1965) (holding that parties validly agreed to arbitrate defense of waiver). This warfare metaphor is deployed frequently in discussions of the last few decades of litigation about arbitration, which may reflect the persistence of the stakeholders on both sides of the issue. *See, e.g.*, *Ferrell v. SemGroup Corp.*, 485 F. Supp. 3d 1334, 1336 n.1 (N.D. Okla. 2020) ("[T]his case is only the latest skirmish in a running battle between interest groups in employment litigation, with one side looking to weaponize the sweeping effect of mandatory individual arbitration while the other side seeks to neutralize it." (quoting *Bock v. Salt Creek Midstream LLC*, No. 19-1165, 2020 WL 3989646, at *1 (D.N.M. July 15, 2020))), *rev'd and remanded sub nom. Ferrell v. Cypress Env't Mgmt.-TIR, LLC*, No. 20-5092, 2021 WL 5576677 (10th Cir. Nov. 30, 2021); *Becker v. Delek US Energy, Inc.*, No. 20-CV-285, 2020 WL 4604544, at *1 (M.D. Tenn. Aug. 11, 2020) (same); *GGNSC Chestnut Hill LLC v. Schrader*, No. CV 16-10525, 2018 WL 1582555, at *1 (D. Mass. Mar. 31, 2018) ("This case is an example of the many skirmishes that continue along the recently intensifying—but wavering—battle line between those who support resolution of disputes by arbitration and those who support resolution of disputes by conventional litigation."), *aff'd sub nom. GGNSC Admin. Servs., LLC v. Schrader*, 958 F.3d 93 (1st Cir. 2020); *see also* David Horton, *Arbitration About Arbitration*, 70 Stan. L. Rev. 363, 369 & n.39 (2018) (discussing whether certain regulatory action "may be the next battleground in the 'arbitration war'" (quoting Editorial, *The Arbitration War*, N.Y. Times (Nov. 26, 2010), https://www.nytimes.com/2010/11/27/opinion/27sat1.html)).

First, traditional contract law principles apply equally to contracts formed online and to arbitration clauses within such contracts. The relevant principles hold that one cannot assent to a contract term unless one has at least inquiry notice of the term, which "turns on" its "[c]larity and conspicuousness." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (internal quotation marks omitted) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002)). Our Court's decision today sensibly applies *Meyer* in finding Grubhub's arbitration agreement sufficiently conspicuous in the context of Grubhub's online interfaces. But this is likely the high-water mark for enforcement of arbitration agreements in such settings, where the relevant contract clauses could escape consumers' notice.

Second, the panel agrees unanimously on the principle that Section 2 of the Federal Arbitration Act ("FAA") applies only to contracting parties' agreements to arbitrate claims "arising out of such contract or transaction." 9 U.S.C. § 2. We also agree unanimously that one consequence of that principle is that the FAA does not countenance motions to compel arbitration of claims that lack a requisite "nexus" to the contract containing the arbitration clause. *See* Maj. Op. at 22, 24; Dissenting Op. at 2–3. In this case, that principle required denial of Grubhub's motion.

I.

Congress enacted the FAA to make "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (internal quotation marks omitted) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). The FAA was not intended to elevate arbitration

2

agreements above reproach, and while courts often uphold such agreements, there are limits. Arbitration agreements are subject to "generally applicable contract defenses." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). For example, we will not enforce arbitration agreements that are unconscionable, *id.*, or contrary to federal law, *see, e.g.*, *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024). And, relevant here, we will not enforce arbitration agreements to which one party did not assent, for example because they lacked reasonable notice,[2] or because no reasonable person would understand their assent to arbitration to extend to a given dispute.[3] Our holding today is consistent with these limitations.

---

[2] *See, e.g.*, *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 842 (2d Cir. 2021) (holding consumer lacked reasonable notice of arbitration agreement that was accessible online via a web address displayed on a hard-copy in-store display that failed to alert consumers to what actions would constitute assent); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292–95 (2d Cir. 2019) (holding consumer lacked reasonable notice of arbitration agreement that was accessible via a hyperlink to which the consumer's attention was not called that was contained in a lengthy post-sale email); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 235–37 (2d Cir. 2016) (holding consumer plausibly alleged lack of reasonable notice of arbitration agreement that was accessible via a hyperlink that appeared on a cluttered web page and was not adjacent to the "Place your order" button that would ostensibly manifest assent); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 123 (2d Cir. 2012) (holding consumer lacked reasonable notice of arbitration agreement contained in an unsolicited email sent after enrollment that purported to require no affirmative manifestation of assent); *Specht*, 306 F.3d at 32 (holding consumer lacked reasonable notice of arbitration agreement to which their attention was not called that was accessible only by scrolling down).

[3] *See, e.g.*, *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 277 (S.D.N.Y. 2021) ("Notwithstanding the literal meaning of the clause's language, no reasonable person would think that agreeing to [Defendant's] Terms and Conditions would obligate them to arbitrate literally every possible dispute he or she might have with the service provider." (internal quotation marks omitted)); *see also Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 180–85 (2d Cir. 2021) (holding agreement that undisputedly required arbitration of "all

In my view, Grubhub barely threaded the needle through our precedents that have examined reasonable notice of arbitration agreements in the context of online interfaces. If the check-out page in Grubhub's web interface were even marginally more cluttered, the outcome of this appeal would likely be different.[4]

While the details of this case are specific to online consumer transactions, the relevant principles are historically rooted and widely applicable. Every contract, "in order to be binding," "requires a meeting of the minds and a manifestation of mutual assent." *Starke v. SquareTrade, Inc*, 913 F.3d 279, 288 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 715 N.E.2d 1050 (N.Y. 1999)). There can be no meeting of the minds if one party lacks notice of the contract's terms. *Id.* at 289. "Where an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice" and then assents. *Id.* Inquiry notice depends on "whether the term was obvious and whether it was called to the offeree's attention," and that

---

legal claims arising out of or relating to employment" did not cover fiduciary breach claim under ERISA).

[4] Grubhub put two interfaces before us, a mobile application and a "web interface" which "is not as streamlined as its mobile app." Maj. Op. at 16. Because Grubhub failed to offer any evidence before the district court about which of the interfaces Plaintiffs used, we must infer that they used the web interface, which presents a closer call on reasonable conspicuousness and notice. *See Soliman*, 999 F.3d at 833–34 (noting that "[c]ourts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment," in which "we draw[] all reasonable inferences in favor of the non-moving party" (internal quotation marks omitted) (quoting *Nicosia*, 834 F.3d at 229)). In any event, I concur in our holding that both interfaces provide (barely) sufficient notice.

4

determination "often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Id.*[5]

Applying these principles to contracts formed between consumers and merchants online, we have recognized that "[r]easonable conspicuousness turns on the design and content of the relevant interface." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Starke*, 913 F.3d at 289). This is a "fact-intensive" inquiry into the totality of the circumstances. *Id.* (internal quotation marks omitted) (quoting *Meyer*, 868 F.3d at 76). And that is reflected in our fact-bound conclusion today that the relevant "features, taken together, are enough to provide inquiry notice to a reasonably prudent web user." Maj. Op. at 17. But our precedent sets out several guardrails that guide our inquiry.

Two of our prior cases bookend the facts of this case: *Meyer v. Uber Technologies* and *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 235–376 (2d Cir. 2016). We have said the "clean, uncluttered, and conspicuous" placement of the terms at issue in *Meyer* "can be used as a model that

---

[5] *Starke* applied New York law, which applies here as well, but we have recognized that "traditional contract formation law does not vary meaningfully from state to state." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702–03 (2d Cir. 2023); *see, e.g., Meyer*, 868 F.3d at 74-75 (reciting similar principles under California law, which contains "substantially similar rules for determining whether the parties have mutually assented to a contract term" (internal quotation marks omitted) (quoting *Schnabel*, 697 F.3d at 119)); *Starke*, 913 F.3d at 287 n.5 (noting that in *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015), the court found New York, California, and Illinois law to be substantively similar on the issue of contract formation); *id.* at 290 n.7 ("In *Nicosia*, we applied Washington law on the question of contract formation, but Washington law is the same as New York law with respect to the issue of contract formation." (citations omitted)); *Schnabel*, 697 F.3d at 119 (similar with respect to Connecticut and California).

this Court has found effective." *Starke*, 913 F.3d at 297. But just a year before *Meyer*, we found that a web interface with extra bells and whistles was too distracting to provide reasonable notice. *See Nicosia*, 834 F.3d at 236–37. We have since tolerated minor deviation from the clarity of *Meyer*, such as using a different font color in an otherwise clean interface. *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 707 (2d Cir. 2023). But we rejected an approach that bore "more resemblance to the Amazon order page in *Nicosia* than to the uncluttered screen in *Meyer*." *Starke*, 913 F.3d at 293 (citations omitted).

Merchants therefore have a very narrow space in which to use an interface that is less lucid than in *Meyer* and still compel arbitration, and Grubhub comes very close to its outer perimeter. Like in *Meyer*, Grubhub's web interface does not hide from consumers that Grubhub would consider their pressing the "order" button to mean they agree to terms accessible via hyperlink. But Grubhub's web interface is unmistakably more chaotic than in *Meyer*, and only marginally less busy than in *Nicosia*. Ultimately, we have declined to "hold that the format used in *Meyer* is the only effective way to use hyperlinks," *Starke*, 913 F.3d at 296–97, and Grubhub's variation on the theme offers *just* enough to edge over the line of reasonableness. As merchants continue to try to enforce contracts of adhesion containing mandatory arbitration clauses, they would do well to strive for clarity.

Finally, I note that Grubhub also just barely met its evidentiary burden to "submit evidence of how [its Terms of Use were] presented to users." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 103 (2d Cir. 2022). Grubhub offered a declaration describing the timeline of updates to Grubhub's Terms of Use and of Plaintiffs' purchases from

6

Grubhub, which purports to attach screenshots of "the Grubhub checkout page." Joint App'x 114 ¶ 10; *id.* 120, 122. Like Grubhub's web interface, its declaration is not a model for future litigants hoping to prevail on a standard akin to the standard for summary judgment. But viewed in its entirety, including both the screenshots and timeline, the declaration is reasonably read to declare that the screenshots depict the web interface on the relevant dates.

## II.

I need not belabor the above because, even though Grubhub's web interface provided barely adequate notice of its arbitration clause, we hold that Grubhub's arbitration clause is unenforceable as to Plaintiffs' claims. The Court appropriately rejects what amounts to an attempt by Grubhub to funnel every conceivable claim against it into arbitration, no matter its content. The principle that controls this case is recognized by all three panel members: "The phrase 'arising out of' [in Section 2 of the FAA] establishes a nexus limitation on which disputes are subject to the FAA," beyond which the FAA "will not apply to any attempts to send that dispute to arbitration." Dissenting Op. at 2; *see* Maj. Op. at 22.

Two important consequences follow where the FAA does not apply due to a lack of nexus. First, the FAA gives federal courts "no power to compel arbitration" in such cases. *See Revitch v. DIRECTV, LLC*, 977 F.3d 713, 724 (9th Cir. 2020) (O'Scannlain, J., concurring) (citations omitted). Because Grubhub moved to compel only under the FAA, that is sufficient to resolve the issue for now. *See* Memorandum of Law in Support of Defendant Grubhub Inc.'s Motion to Compel Arbitration of Certain Named Plaintiffs' Claims,

*Davitashvili v. Grubhub, Inc.*, No. 20-cv-3000 (S.D.N.Y. Aug. 26, 2022), ECF No. 73.

Second, while not necessary to decide the instant appeal, the nexus limitation we recognize constrains the FAA's extra protections for arbitration clauses wherever and however they may be enforced. Where claims do not "arise out of" the contract at issue, that means no federal presumption of arbitrability, *see Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1213–14 (11th Cir. 2021), and no preemption of state law perceived as hostile to arbitration, *cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). Many courts have already declined to enforce exceptionally broad arbitration clauses or to interpret them to reach absurd results.[6] Faithful application of the nexus requirement means that in some cases, the FAA does not displace state law limits on arbitration or place a thumb on the scale in interpreting those clauses.

\* \* \*

Online merchants should remember that there are real limits on their ability to force consumers to arbitrate. Those limits protect, among others, consumers who had no reasonable notice they had implicitly agreed to arbitration at all, or who could not reasonably

---

[6] *See, e.g.*, *Revitch*, 977 F.3d at 716-21; *McFarlane*, 524 F. Supp. 3d at 275–79; *Mey v. DIRECTV, LLC*, No. 17-CV-179, 2021 WL 973454, at \*11 (N.D. W. Va. Feb. 12, 2021); *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 903–07 (N.D. Cal. 2020); *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 502–05 (E.D.N.Y. 2016); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1262–63 (S.D. Cal. 2012); *see also Smith v. Steinkamp*, 318 F.3d 775, 776–77 (7th Cir. 2003) (noting that, if certain clauses of an arbitration agreement that appear to go beyond claims "arising from or relating" to the contract were "read as standing free from" the underlying contract, "absurd results ensue").

conceive that an arbitration clause was as broad as the merchant later claims.

We have emphasized in several arbitration decisions that we have not prescribed rigid formulas to govern reasonable notice across all online commerce,[7] and we have not done so here.  But as our law comes to rest on the outer limits, merchants take on risk when they choose not to be very clear with consumers.

The same is true of efforts to push the limits of arbitrability under the FAA.  If merchants are dissatisfied with these limits, they of course may ask Congress to expand the FAA's scope, but importantly, they might not.  Merchants may decide that forcing arbitration on consumers who suffer serious injuries unrelated to their transactions is too unpopular a position to take, commercially or politically, in addition to being a losing argument under current law.

---

[7] *See, e.g.*, *Edmundson*, 85 F.4th at 707; *Starke*, 913 F.3d at 296–97; *Soliman*, 999 F.3d at 842 (emphasizing, "as we did in *Meyer*, that 'there are infinite ways to design a website or smartphone application'" and "we impose no particular features that must be present to satisfy the reasonably conspicuous standard").

9