23-521
*Davitashvili v. Grubhub Inc.*

RICHARD J. SULLIVAN, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority that Plaintiffs' claims against Uber must be sent to an arbitrator to decide the threshold question of arbitrability, Maj. Op. Part II-B, and that Plaintiffs agreed to Grubhub's terms of service, Maj. Op. Part II-A. I also agree, as a general matter, that a defendant may not compel arbitration of claims that are "completely unrelated" to the underlying transaction or contract in which the agreement to arbitrate was made. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 722 (9th Cir. 2020) (O'Scannlain, *J.*, concurring). Where I part ways with the majority is in its conclusion that Plaintiffs' antitrust claims here are unrelated to their use of Grubhub's platform. Maj. Op. Part II-C. As Plaintiffs allege in their own complaint, and as they argued in opposing Grubhub's motion to dismiss, their use of Grubhub is what gave it the market power it needed to force restaurants to raise their off-app prices. If that use of Grubhub is so legally significant as to form the crux of Plaintiffs' antitrust theory, then it stands to reason that the antitrust claims "arise out of" Plaintiffs' use of Grubhub, and Grubhub may compel arbitration of those claims under the Federal Arbitration Act ("FAA").

As a threshold matter, I would hold that the FAA – and its presumption in favor of arbitrability – applies to this dispute. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). Pursuant to section 2 of the FAA, parties may agree to arbitrate any dispute "arising out of" an underlying "contract or transaction" between them. 9 U.S.C. § 2. The phrase "arising out of" establishes a nexus limitation on which disputes are subject to the FAA. *See*

*Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1212–13 (11th Cir. 2021). A dispute cannot be said to "arise out of" the parties' underlying transaction when the dispute is "completely unrelated" to that earlier transaction. *Revitch*, 977 F.3d at 722 (O'Scannlain, J., concurring). While this does not necessarily require a "caus[al]" relationship, "arising out of" does require some meaningful nexus between the transaction and the subsequent dispute. *Id.*

This means that, at least in some cases, a dispute will be so untethered from the parties' initial transaction that the FAA (and its pro-arbitration presumption) will not apply to any attempts to send that dispute to arbitration. For instance, even if a customer were to sign up for a cell phone contract and agree to arbitrate "all disputes" with the cell provider or its "affiliates," the FAA would not compel arbitration in the event that the customer sued one of those affiliates over unwanted robocalls by the affiliates' *satellite television* services. *Id.* at 715 (majority opinion) (affirming district court's denial of motion to compel arbitration on these facts). Nor would the FAA compel arbitration of a cable company employee's claims against his employer for leaking his personal data merely because the employee happened to be a private cable customer who agreed to arbitrate "any and all disputes" when he signed up for cable. *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 277–78 (S.D.N.Y. 2021). In such cases, there would be no nexus between the underlying transaction (for the provision of cell phone and cable services) and the subsequent litigation claims (based on illegal satellite television robocalls and breaches of employee data), and so the FAA would not apply.

Here, by contrast, there is a clear nexus between the litigation

claims and the underlying transaction, since Plaintiffs' use of Grubhub's platform is what gave Grubhub the market power to commit the alleged antitrust violations. Indeed, Plaintiffs' entire theory of antitrust liability – which they allege in their complaint and relied on in opposing Grubhub's motion to dismiss – is that Grubhub was able to accumulate so many users on its app that it had "market power" to "force" restaurants to raise their off-app prices. App'x at 32 (¶ 55), 68 (¶ 190); *see also Davitashvili v. Grubhub Inc.*, No. 20-cv-3000 (LAK), 2022 WL 958051, at *10 (S.D.N.Y. Mar. 30, 2022) ("The amended complaint also alleges plausibly that restaurants cannot feasibly avoid doing business with Defendants because restaurants need access to the platforms' customers – many of whom use only one platform due to platform 'stickiness' – in order to generate sufficient sales.").

Put simply, not only is there a nexus between Plaintiffs' use of Grubhub and their antitrust claims, Plaintiffs affirmatively *relied* on that very nexus in asserting their antitrust claims. That is a key distinction between this case and others like *Revitch* and *McFarlane*, in which the plaintiffs' theories of liability were "completely unrelated" to the parties' underlying transaction. *Revitch*, 977 F.3d at 722 (O'Scannlain, *J.*, concurring). And it also distinguishes this case from others relied on by the majority, where "the substance of [the plaintiff's] claims ha[d] *no connection*" to his relationship with the defendant. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021) (emphasis added). In other words, if Plaintiffs' use of Grubhub is sufficient to form the crux of Plaintiffs' antitrust theory, it stands to reason that Plaintiffs' claims "aris[e] out of" their use of Grubhub within the meaning of the FAA. 9 U.S.C. § 2.

3

Because the FAA applies to this dispute, so does its "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (internal quotation marks omitted). Applying that presumption here, I would also hold that Grubhub's arbitration clause extends to the antitrust claims. The majority disagrees, concluding that Grubhub's arbitration clause does not cover the antitrust claims because the clause extends only to claims that "relate[] to Plaintiffs' access and use of Grubhub." Maj. Op. at 20 (internal quotation marks omitted). But as just discussed, the antitrust claims do relate to Plaintiffs' use of Grubhub, since Plaintiffs' entire theory of liability is that so many customers (including Plaintiffs) used Grubhub that it was able to force restaurants to raise their off-app prices. *See Davitashvili*, 2022 WL 958051, at *10. And even if we harbored doubts as to whether that nexus is significant enough, the FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

I therefore would hold that Grubhub's arbitration clause validly covers Plaintiffs' antitrust claims, and that those claims must be sent to arbitration. Accordingly, I respectfully dissent from Part II-C of the majority's opinion.

4